

Exhibit B

STATE OF NEW YORK
SUPREME COURT          COUNTY OF MONROE

---

Obsession Bar and Grill, Inc., and Joan Ortiz,

                    Petitioners,-Plaintiffs

          -VS.-

The Zoning Board of Appeals for the City of Rochester,
and the City of Rochester,

                    Respondents-Defendants.

---

**VERIFIED ANSWER**

Index No. 12-12802

Respondents, Zoning Board of Appeals of the City of Rochester and the City of

Rochester, by their attorney Robert J. Bergin, Corporation Counsel, Sara L. Valencia, Esq.,

of counsel, answer Petitioners' Verified Petition as follows:

1.     Admit the allegations contained in paragraphs 7, 9, 10, 31, 33, 34, 35, and 36

of the Verified Petition.

2.     Deny the allegations contained in paragraphs 2, 3,4,17, 19, 20, 21, 22, 24,

25, 26, 27, 32 and 40 the Verified Petition.

3.     Lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraphs 1, 6, 13, and 16 of the Verified Petition.

4.     Admit so much of the allegations contained in paragraph 5 of the Verified

Petition as alleges Obsession Bar and Grill is a business operating at 564 Chili

Avenue and lack knowledge or information sufficient to form belief as to the truth of

the other allegations contained therein.

5.     Admit so much of the allegations contained in paragraph 8 of the Verified Petition as alleges the Zoning Board of Appeals is a tribunal of the City of Rochester.

6.     Admit so much of the allegations contained in paragraph 14 in so far as it cites a portion of NY ABC Law § 106(5) and respectfully refer the Court to said statute.

7.     Deny the allegation contained in paragraph 11 of the Verified Petition insofar as it alleges 564 Chili Avenue is located in a "Neighborhood Commercial" zoning district.  Said location is located in a Neighborhood Center District (C-1) zoning district pursuant to § 120-33 of the Zoning Code (hereinafter "Code").

8.     Deny the allegation contained in paragraph 15 of the Verified Petition insofar as NY ABC Law § 17 (11), as quoted therein, becomes effective July 18, 2015.

9.     Admit so much of the allegations contained in paragraph 18 insofar as it discusses one of several enumerated power granted to cities under Gen. City L. § 20 and respectfully refers to the Court to the same.

10.     Deny the allegation contained in paragraph 19 of the Verified Petition insofar as Gen. City L. § 20 (25) empowers cities to:

> …regulate and restrict the location of trades and industries and the location of buildings, designed for specified uses, and for said purposes to divide the city into districts and to prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation and the uses for which buildings may not be erected or altered. Such regulations shall be designed to promote the public health, safety and general welfare and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development, in accord with a well considered plan.  Gen. City L. § 20 (25).

11. Deny the allegation contained in paragraph 20 of the Verified Petition in that § 120-34(O) of the Code is a zoning law of general application which restricts the operating hours of establishments. In addition, as set forth below, this law became effective after Petitioners' variance application was submitted and decided.

12. Deny the allegation contained in paragraph 21 of the Verified Petition as the Court of Appeals has held "[s]tate statutes do not necessarily preempt local laws having only 'tangential' impact on the State's interests. Local laws of general application—which are aimed at legitimate concerns of a local government—will not be preempted if their enforcement only incidentally infringes on a preempted field." *DJL Rest. Corp. v. City of New York,* 96 N.Y.2d 91, 97 (2001).

13. Deny the allegations contained in paragraphs 22 and 23 of the Verified Petition as any impact allegedly caused by § 120-34(O) of the Zoning Code is incidental.

14. Deny the allegation contained in paragraph 24 of the Verified Petition based on *DJL Rest. Corp. v. City of New York,* 96 N.Y.2d 91(2001).

15. Admit so much of the allegations contained in paragraph 28 as alleges Ms. Ortiz submitted a "Statement of Income and Expense."

16. Admit so much of the allegations contained in paragraph 29 as alleges Ms. Ortiz submitted a "Statement of Unnecessary Hardship."

17. Admit so much of the allegations contained in paragraph 30 as alleges the State of Unnecessary Hardship lists the names and addresses of six establishments Petitioners alleged remain open until 2:00 a.m.

18. Admits the allegations contained in paragraphs 33, 34, 35, and 36 of the Verified Petition and respectfully refers to the Court to the "Use Variance Findings and & Decision" of the Zoning Board which is attached to **Exhibit A**.

19. Admit so much of the allegations contained in paragraph 37 of the Verified Petition as alleges the Zoning Board of Appeals granted a variance allowing the premises at 564 Chili Avenue to operate until 2:00 a.m. on Friday and Saturday and respectfully refers the Court to the "Use Variance Findings and & Decision" of the Zoning Board which is attached to **Exhibit A**.

20. Deny the allegations contained in paragraphs 38 and 39 of the Verified Petition because, under §120-195 of the Code, there is no requirement the Zoning Board of Appeals make the factual findings and/or or explanations referenced in said paragraphs.

**RESPONDENTS, AS PART OF THEIR,
ANSWER ALSO STATE:**

21. That the following documents which constitute the record are attached:

   A. Notification of Variance Decision dated October 22, 2012 (**Exhibit A**);
   B. Zoning Board of Appeals Staff Report dated October 18, 2012 (**Exhibit B**);
   C. Transcript of the Zoning Board of Appeals Public Hearing held on October 18, 2012 (**Exhibit C**);
   D. Speaker's List for hearing held on October 19, 2012 (**Exhibit D**);
   E. Variance Application of Joan Ortiz dated September 14, 2012 including:
   - Statement of Income and Expense
   - Statement of Unnecessary Hardship
   - Environmental Assessment Form
   - Denied Certificate of Zoning Compliance Form
   - Maps (**Exhibit E**);
   F. Letter to Zoning Board from the 19th Ward Community Association dated October 18, 2012 (**Exhibit F**);

G. Letter to Zoning Board from Michelle Bowes of Xpressive Styles dated October 17, 2012 (***Exhibit G***);

H. Letter by Izora Manhertz dated October 19, 2012 (***Exhibit H***);

I. Undated letter by Trina Beckford (***Exhibit I***);

J. Undated letter by Christopher Downer (***Exhibit J***);

K. Letter by Debra Mais dated October 16, 2012 (***Exhibit K***);

L. Staff Notes of public hearing held on October 18, 2012 (***Exhibit L***);

M. Copy of § 120-135 of the Zoning Code, which was in effect at the time Petitioners applied for a use variance in September 2012; (***Exhibit M***)

N. Certified copy of Ordinance NO. 2012-363 containing amendments to §§ 120-34 and 120-35 of the Zoning Code which became effective on November 1, 2012. (***Exhibit N***);

O. Affidavit of Notification (***Exhibit O***); and

P. GIS printouts , Building Information System Property History and photographs (***Exhibit P***).

22.      Deny each and every allegation contained in the petition not heretofore admitted, denied or otherwise controverted.

23.      Deny that petitioners are entitled to the relief prayed for in the Petition.

## AS AN OBJECTION IN POINT OF LAW, RESPONDENTS ALLEGE:

24.      Petitioners' action for declaratory judgment should be dismissed because the ordinance Petitioners seek a declaration regarding, § 120-34(O) of the Code, did not become effective until November 1, 2012. Thus, § 120-34(O) of the Code was not in effect at anytime relevant time for purposes of this proceeding. See attached ***Exhibit N***. At the time Petitioners' application was submitted and decided, bars and restaurants were special permit uses under § 120-35(H) and (I) of the Code. See attached ***Exhibit M***.

## AS AN ADDITIONAL OBJECTION IN POINT OF LAW, RESPONDENTS ALLEGE:

25.      The decision of the Zoning Board of Appeals is supported by a rational basis in the record and was not arbitrary or capricious.

26. **AS AN ADDITIONAL OBJECTION IN POINT OF LAW, RESPONDENTS ALLEGE:**

27. Petitioners fail to state causes of action for which relief may be sought.

WHEREFORE, Respondents respectfully request judgment:

A. Upholding the determination of the Zoning Board of Appeals of the City of Rochester;

B. Denying the application of Petitioners and dismissing the Petition/Complaint in all respects; and

C. For such other and further relief as this Court shall deem just and proper.

DATED: January 10, 2013          ROBERT J. BERGIN, CORPORATION COUNSEL

BY: _____
SARA L. VALENCIA, ESQ., of Counsel
Attorneys for Respondent, City of Rochester,
30 Church Street, Room 400A City Hall
Rochester, NY  14614
Telephone: (585) 428-6752

TO:    Michael Burger, Esq.

STATE OF NEW YORK)
COUNTY OF MONROE)   SS:

SARA L. VALENCIA, being duly sworn, deposes and says:

1.      That she is a Municipal Attorney for the City of Rochester and counsel to the Bureau of

Inspection and Compliance Services, the entities named in the foregoing Answer; that she has read

the foregoing and knows the contents thereof; that the same is true except as to those matters stated

to be upon information and belief, and as to those matters, she believes them to be true.

2.      Deponent further says that the reason this verification is made by deponent, and not by

the City of Rochester, is because the City of Rochester is of a governmental subdivision, and she is

the attorney of record thereof,  and that the  grounds of deponent's belief as to all matters in said

Answer, not stated upon her own knowledge, are investigations caused to be made concerning the

matters involved or purporting to be involved herein and information acquired by the deponent in the

regular course of her duties as an employee of said governmental subdivision and from the books,

papers and records of said governmental subdivision.

_____
                                              Sara L. Valencia

Sworn to before me this

_____ day of January, 2012

_____

JULIE T. ST. CLAIR
Notary Public, State of New York
Monroe County
Commission Expires September 24, 20 15

STATE OF NEW YORK
SUPREME COURT          COUNTY OF MONROE

OBSESSION BAR AND GRILL, INC., AND JOAN ORTIZ.,

                              Petitioners-Plaintiffs,

                                                                    **AFFIDAVIT**

          -VS.-

                                                          Index No. 12-12802

THE ZONING BOARD OF APPEALS FOR
THE CITY OF ROCHESTER, AND THE
CITY OF ROCHESTER

                         Respondents-Defendants.

STATE OF NEW YORK)
COUNTY OF MONROE)   SS:

     MARCIA BARRY, being duly sworn deposes and says that:

     1.          I am Director of the Bureau of Planning and Zoning for the City of

Rochester.  In this capacity, one of my responsibilities is to serve as Secretary to the

Zoning Board of Appeals (hereinafter "Board") for the City of Rochester.

     2.          I submit this affidavit in response to the Verified Petition, with respect to

allegations concerning the Board's decision with regard to the variance application by

Joan Ortiz of Obsession Bar and Grill, Inc.  I am fully familiar with the facts and

circumstances giving rise to this proceeding and make this affidavit based upon my

personal knowledge of the facts and/or a review of the relevant records except where

noted to be by information and belief.

     3.          Obsession Bar and Grill, Inc. is located at 564-568 Chili Avenue,

Rochester, NY.   It is located in a C-1 Neighborhood Center District.   The "Neighborhood

Center District provides for small-scale commercial uses offering primarily convenience

shopping and services for adjacent residential areas. Proximity to residences requires

1

that commercial operations in the C-1 District are low intensity, unobtrusive and conducted at a scale and density compatible with the surrounding neighborhood. There is a relatively low demand on public services, transportation and utilities." § 120-33 of the Zoning Code (hereinafter "Code").

4.     On September 17, 2012, Petitioners submitted a use variance application for Obsession Bar & Grill, Inc. to the Board. See **Exhibit E.** The application sought to extend the hours of operation of the bar/restaurant with live entertainment from 12:00 a.m. to 2:00 a.m., seven days a week.

5.     At the time Petitioners submitted the aforementioned variance application, bars and restaurants were special permit uses and were not permitted as of right. See § 120-35 of the Code (**Exhibit M**) as opposed to § 120-34(O) of the Code which became effective November 1, 2012 (**Exhibit N**). With a special permit, bars and restaurants were allowed to operate from 6:00 a.m. to 11 p.m. § 120-35 of the Code. Entertainment is a prohibited use in a C-1 district.

6.     In 2010, Petitioners applied for a variance to re-establish a bar/restaurant with live entertainment and requested hours of operation until 2:00 a.m.

7.     Entertainment is recognized as a more intensive use than bar operations. Moreover, entertainment causes recognized impacts and requires police licensing. As such, the granting and/or expansion of entertainment use demands greater controls, such as limitations on hours of operation, to minimize adverse impacts on the neighborhood. It is noteworthy that even in a C-2 commercial district; entertainment is a special permit use and thus not permitted as a right.

8.     By variance V-010-10-11, dated September 16, 2010, Petitioners were granted a variance re-establishing the property as a bar/restaurant with live entertainment and permission to operate until midnight. The variance allowed for an additional hour of operation for the bar/restaurant beyond that specially permitted. Moreover, the variance

2

granted permission for the otherwise prohibited use of live entertainment until midnight. Similar control hours are often placed on bars in C-2 districts.

9.     On October 18, 2012, a public hearing was held regarding the variance application submitted on September 17, 2012.

10.     Testimony adduced at the hearing established that extension of operating hours to 2:00 a.m. would cause significant disturbances which would adversely impact residents' ability to have quiet enjoyment, especially during the work week.

11.     A community resident who testified at the hearing explained the detrimental impact closing hours at 2:00 a.m. would have:

> ...As someone that has to sleep there, it is a problem, in terms of the noise, young people hanging out and loitering in the area, and when you have a place open late at night it draws more people to the area. There is loud music from vehicles and people talking, and then dogs start barking, it's a hodgepodge of noise and disturbance of the peace. What time do the residents have to sleep? When you wake up on the morning we are still dealing with the residue of this establishment being open until 2:00 AM. I am opposed to the extended hours but I hope they can help out the community and help with the loitering and the young people hanging out and let us sleep during the week. *Exhibit C* at pages 15-16.

12.     Similar concerns were raised by the 19th Ward Community Association in a letter to the Board dated October 18, 2012. The letter, in pertinent part, stated:

> There have been 38 calls to the police in the last two years for vice, fights, and disorderly and suspicious criminal activity. This is not a credible record to merit a 2:00 a.m. closing. Extending the closing time will merely extend the time that there will be disturbance to the surrounding neighborhood. *Exhibit F.*

13.     A Board member explained why concerns about disturbance were valid:

> ....when the bar closes and everyone goes to their cars it gets very noisy getting in their cars and turning on their radios and other things, but it happens. If anyone who lives near a bar or restaurant will tell you that is what happens and it is very disturbing to sleep. Testimony of R. Khaleel in *Exhibit C* at page 17.

3

14.     Concerns about the problem of loitering in the Chili Avenue area were also expressed by a business owner who testified in support of Petitioners.   See the testimony of Terry Stiff-Grannum in *Exhibit C* at pages 12 and 15.

15.     Petitioner Ortiz and her attorney, Anthony Lafay, Esq., testified at the hearing in support her application and stated her business operates Monday to Saturday and was unable to compete with other businesses which were open to 2:00 a.m. *Exhibit C* at pages 10-11. These were the businesses listed in the Statement of Unnecessary Hardship (attached to *Exhibit E*) portion of the variance application.

16.     Petitioners listed six businesses alleged to remain open until 2:00 a.m. Two of the businesses listed by Petitioners, Turn in Tavern and Eclipse Bar & Grill, have no legal rights to operate until 2:00 a.m. Turn in Tavern is located at 651 Chili Avenue in an R-1 district.   City records indicate use of the premises as a bar has been discontinued and there are no preexisting rights to extended hours. Eclipse Bar & Lounge at 374 Thurston Road was granted a special permit in 1997 for extended hours until 12 a.m. This establishment is located in a C-1 district.

17.     Petitioners also listed Thurston Bar & Grill and Classics Bar & Grill, LLC. These establishments are both located in C-1 districts and were granted permission to operate until 2:00 a.m. more than ten years ago.   Thurston Bar & Grill, located at 529 Thurston Road, obtained a certificate of nonconformity in 1997 to operate until 2 a.m. Classics Bar & Grill, LLC, located at 685 Thurston Road, was granted a special permit in 1985 for extended hours.

18.     Another two of the businesses listed, Julius Café, Inc. and PI's Lounge were formerly located in zoning districts which permitted operation until 2:00 a.m. as of right and thus were grandfathered in and/or acquired pre-existing rights.   Julius Café, Inc. of 543 Thurston Road was located in a C-2 district until 2003 when the district changed to C-1.   Operation until 2:00 a.m. has been continuous and thus was grandfathered in.

Similarly, Pl's Lounge of 499 West Avenue, while presently located in a C-1 district, was in a C-3 district until 2003 and thus acquired pre-existing rights to extended hours.

19.    Rights acquired by other businesses do not vest subsequent applicants for use variances with new rights or entitlements.

20.    It is important to note that Petitioner Ortiz in her testimony before the Board, acknowledged the Chili Avenue area is one of which citizens are generally fearful. See the testimony of Joan Ortiz in **Exhibit C** at page 8.

21.    Pursuant to § 120-195 of the Zoning Code, the Board issued a decision on the variance application. In its decision, dated October 22, 2012, the Board granted a portion of Petitioners' request and granted a variance allowing the premises to operate as a bar/restaurant with live entertainment until 2:00 a.m. on Friday and Saturday and until midnight on Monday-Thursday. **Exhibit A**.

22.    Upon information and belief, the Board's decision was based on the corroborated evidence in the record regarding the disturbance to the neighborhood which would be caused by extending closing hours to 2:00 a.m. during the weekdays. See **Exhibit C** at pages 12 and 15-17; and **Exhibit F**. The determination minimizes the disturbance to the neighborhood by permitting extended hours on Fridays and Saturdays. By doing so, the determination preserves the character of residential properties adjacent to the subject property.

_____
MARCIA BARRY

Sworn to before this 11th
day of January, 2013.

_____
Notary Public

JOHANNA I. SANTIAGO
Notary Public
State of New York
County of Monroe
Commission Expires____9/22/13

5

**EXHIBIT A**

 **City of Rochester**

Neighborhood and Business Development
City Hall Room 125B, 30 Church Street
Rochester, New York 14614-1290
www.cityofrochester.gov

 Bureau of Planning and Zoning

## NOTIFICATON OF VARIANCE DECISION
October 22, 2012

**File Number:**      **V-030-12-13**
**Applicant:**      **Joan Ortiz, Obsessions Bar and Grill**
**Address:**      **564 Chili Avenue**
**Zoning District:**      **C-1 Neighborhood Center District**

As indicated in the attached decision, the Zoning Board **APPROVED a bar/restaurant with live entertainment Monday through Thursday until midnight and Friday through Saturday until 2:00 a.m.**

This decision allows you to move forward in the process to get a Certificate of Zoning Compliance. Please note that a variance shall become null and void one (1) year after the date on which it was issued unless all approvals are issued and the use is established.

**Contact Zina Lagonegro at 428-7054 to complete the approval process.**



RECEIVED
CITY OF ROCHESTER
CLERK/COUNCIL OFFICE
2012 OCT 23 PM 3: 27

Phone: 585.428.6526      Fax: 585.428.6137      TTY: 585.428.6054      EEO/ADA Employer

# USE VARIANCE FINDINGS & DECISION

**File Number:** V-030-12-13

**Applicant:** Joan Ortiz, Obsessions Bar and Grill

**Address:** 564 Chili Avenue

**Zoning District:** C-1 Neighborhood Center District

**Section of Code:** 120-199E

Case Summary

Application# V- 030-12-13
Date of Application: 09-17-12
Date of Public Hearing: 10/18/12
Date Notice Published: 09/28/12
Date of County Referral: NA
Date of Final Action: 10/18/12
Date of Filing of Decision with the City Clerk: 10/23/12

**REQUEST:** To extend the hours of operation of a bar/restaurant from 12:00 a.m. to 2:00 a.m. Monday through Sunday; a prohibited operation in the C-1 district.

**Permitted Uses of Property**: Bar/Restaurant with live entertainment until midnight.

**No use variance will be granted without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. The following standards must be met for each and every use allowed by zoning on the property:**

1. Can the applicant realize a reasonable return, as shown by competent financial evidence?: Yes___ No_x___

**Reason:** The property is achieving an annual loss of 15% on the total investment.

2. Is the alleged hardship relating to the property unique? (The hardship may not apply to a substantial portion of the zoning district or neighborhood.): Yes_x_ No___

**Reason:** The property is a preexisting non conforming use and is in a challenged neighborhood.

3. Will the requested use variance, if granted, alter the essential character of the neighborhood?: Yes___ No_x_

**Reason:** By limiting the extended hours to only Friday and Saturday night the essential character of the neighborhood will not change.

4. Is the alleged hardship self-created?: Yes___ No_x___

**Reason:** Zoning changes made the use nonconforming.

___

**_ILLUSTRATIONS OF FINANCIAL EVIDENCE_**

* Bill of sale for the property, present value of property, expenses for maintenance.
*Leases, rental agreements.
*Tax bills
*Conversion costs (for a permitted use)
*Realtor's statement of inability to rent/sell.

___

**_SELF-CREATED_**

* What were the permitted uses at the time the property was purchased by the applicant?

*Were substantial sums spent on remodeling for a use not permitted by zoning?

*Was the property received through inheritance, court order, and divorce?

## CONCLUSION OF ZBA BASED ON THE ABOVE FACTORS:

The ZBA, after reviewing the above four standards, finds:

_____ That the applicant has failed to prove unnecessary hardship through the application of the four tests required by the state statutes.

___X___ That the applicant has proven unnecessary hardship through the application of the four tests required by the state statutes. In finding such hardship, the ZBA shall grant a variance to allow use of the property in the manner detailed below, which is the minimum variance that should be granted in order to preserve and protect the character of the neighborhood and the health, safety and welfare of the community:

**(USE) Bar/Restaurant with live entertainment M-Thurs. until midnight and F-Sat until 2:00 a.m.**

## RECORD OF VOTE

| MEMBER NAME | AYE | NAY |
|---|---|---|
| J. O'Donnell | x | |
| R. Khaleel | x | |
| E. Van Dusen | x | |
| P. Tobin | x | |

_Marcia Burns (DK)_                    _10/22/12_

Secretary to the Zoning Board                    Date

**Testimony:**
**Support:**
Joan Ortiz
Richard Ortiz
Anthony P. LaFay
Alex White
Glen Doogal
Terry Smith Brown
Christopher Downer

**Opposition:**
Maria Maasai Sonekai

**Evidence:**
Staff Report
Site Map
Use Variance Application, Statement of Unnecessary Hardship, Statement of Income and
Expense
Survey Map
Photographs
Building Information System property history
A letter of opposition from the 19th Ward Community Association
Five letters in support
Personal Appearance Notice
Affidavit of Notification
Speaker's List



# ZONING BOARD OF APPEALS
## STAFF REPORT
### October 18, 2012

## Use Variance

---

**Case # 8:**                                           Staff Reviewer:  Zina Lagonegro

**File Number:**        V-030-12-13

**Applicant:**          Joan Ortiz, Obsessions Bar and Grill

**Address:**            564 Chili Avenue

**Zoning District:**    C-1 Neighborhood Center District

**Section of Code:**    120-199E

**Request:**            **To extend the hours of operation of a bar/restaurant with live entertainment from 12:00am – 2:00am, 7 days a week, a prohibited use in the C-1 zone.**

## Analysis:

The subject property is a legal bar/restaurant with live entertainment which was granted a Use Variance to operate as such until midnight only in 2010.   The applicant is now applying to extend the hours of operation until 2am, 7 days a week.

## Code Compliance:

Section 120-34 does not permit a bar/restaurant with live entertainment as of right in the C-1 zone.

**Code Enforcement:**  There are no open cases for this property.

**EXHIBIT C**

# TRANSCRIPT OF

# THE ZONING BOARD OF APPEALS

# PUBLIC HEARING

# OCTOBER 18, 2012

# 30 CHURCH STREET

# CITY COUNCIL CHAMBERS

**Regarding:**

| | |
|---|---|
| **Case:** | 8 |
| **File Number:** | V-030-12-13 |
| **Case Type:** | Use Variance |
| **Applicant:** | Joan Ortiz, Obsession Bar and Grill |
| **Address:** | 564-568 Chili Avenue |
| **Zoning District:** | C-1 Neighborhood Center District |
| **Purpose:** | To extend the hours of operation of a bar/restaurant from 12:00 a.m. to 2:00 a.m. Monday through Sunday; a prohibited operation in the C-1 district. |
| **Enforcement:** | No |

**Members Present:**

J. O'Donnell, Chair
R. Khaleel, Vice-Chair
P. Tobin
E. VanDusen

**Speaker:** My name is Anthony Lafay, attorney of the application, Joan Ortiz, the owner of the property at 564-568 Chili Avenue in the City of Rochester. This is a resurrection of a previous application that she made and received approval from, but unfortunately she was underfunded, had to focus her financial resources on rehabilitating the building, which had been neglected for several years before she purchased it. She rehabbed the apartments first so that she would have an income flow, which is now complete. She then turned her attention to the restaurant and grille, which is now complete and has been operating since October of last year (2011). Unfortunate, she is operating at a disadvantage with her competitors who remain open until 2:00 AM. She is restricted to a 12:00 AM closing even though previously she was approved for 2:00, but as you know if you don't implement the approval within a certain period of time you lose that right. She is asking that the Board consider reinstating that approval. She has several people here that will be speaking in favor of the request and I have with me 5 letters of other interested parties who are also in favor, which summarily says that they are aware of the neighborhood and the night life usually begins around 10:00 PM and doesn't end until 2:00 AM because people work different hours.

They acknowledge that she is operating at a handicap because when they are ready to go out and enjoy live music and so forth, and sometimes they have parties with DJ's, she can't because she has to close at 12:00 AM.

**Khaleel:** On the financial, the bar-restaurant is listed as $0. That's not really appropriate. It's not meant to be if the bar itself is making enough money because the bar is considered the tenant. In this case, the tenant owns the building, so what should be there...

**Lafay:** I'm sorry, can you direct my attention to what you are referring to?

**Khaleel:** The top of the financial page, line item #4, the line item is zero.

**Lafay:** But, she is the owner.

**Khaleel:** Yes, I am aware of that but we have to look at this as if this space was rented out what the income would be. That's where the confusion may come in because she is the owner and the tenant. So, I don't think zero is an acceptable number there. Likewise if we go down, I am very suspicious given the high numbers that the electric, fuel, advertising and the sports bar package all relate to things that the tenant should be paying, not the owner of the building.

**Lafay:** Even thought the tenant and the owner are one in the same party?

**Khaleel:** Yes.

**Lafay:** I'm sorry, I don't understand what it is that you are looking for from me.

**Khaleel:** We to know, if I you were the landlord of the property what would you be renting this bar-restaurant for.

**Lafay:** That all calls for speculation.

**Khaleel:** But it is not speculation. There are realtors that can tell you what you would get or what it would go for (rent).

**Lafay:** I would speculate that in this neighborhood the rent would be about $2,500 per month.

**Khaleel:** I would think at a minimum it would be $1/square foot, and that's really minimum.

**Tobin:** I think he is closer.

**Khaleel:** What was that?

**Tobin:** I think he is closer at $2,500/month.

**Khaleel:** That's less than $1/square foot.

**Tobin:** That's almost $30,000/year.

**Lafay:** If you use those numbers the hardship is even more apparent.

**Tobin/Khaleel:** No, because now you have $30,000 of income.

**Tobin:** I know she doesn't, but we have to evaluate the return on the building as if she is the landlord and she is leasing it out to someone

who is going to run a bar-restaurant. What would she lease it to them for?

**VanDusen:** It is the building that is receiving the variance. So we have to look at it from the perspective of the building, and the revenue, and the expenses in that way.

**Lafay:** That seems to defy the reality of the situation. She has to pretend she is receiving something, which we all know she is not.

**Tobin:** But, she would normally be paying rent if she went to a building that she had to put a bar-restaurant in. Correct?

**Lafay:** Sure.

**Tobin:** That's what we are saying.

**Lafay:** Alright, then I suggest that the number would be $2,500/month that she would need to pay out. Then I would also suggest if that is the case, that that makes her hardship even greater because her income doesn't cover that.

**O'Donnell:** So, as the tenant, if this was the tenant's financials, then the $30,000 would actually be an annual expense. So that would be rent. That's almost a wash because she is the owner and the tenant. Then the tenant's expenses would be the electric, fuel and sports package. So, if she is coming to us as the tenant, she wouldn't have the rents of

the apartments, but she would have the expense of the rent of the bar.

**Tobin:** We are evaluating it as if I own the building and I have a bar-restaurant and I have these apartments, what would I be generating as revenue, and then what would my expenses be. I wouldn't be paying $30,000 back out.

**O'Donnell:** Right, but what Anthony is saying is that if I am the owner of the building I wouldn't be before the Board asking for extra hours.

**VanDusen:** That's where the disconnect is between owner and tenant.

**Khaleel:** So, to clarify, out of that $7,500 for electric is electric and fuel included in the rent?

**Lafay:** Joan Ortiz, the owner is here, she can answer your question.

**Ortiz:** My name is Joan Ortiz, 564 Chili Avenue. Yes, utilities are included in the rent.

**Khaleel:** So, out of the $7,500 how much of that is for the apartments?

**Ortiz:** Everything comes on the same bill, there is only one meter for the entire building. When we bought the building it was wired that way. It can't be separated.

**Khaleel:** What about fuel? Same thing, one meter?

**Ortiz:** Yes.

**Khaleel:** Ok, that does make things a little more difficult for us. So now, the $6,000 in advertising, I assume is for the bar?

**Ortiz:** Yes, we run commercials to try and get people to come in for lunch.

**Khaleel:** And the sports package is exclusive to the bar?

**Ortiz:** Yes.

**Khaleel:** What is the difference between the number you put down for repairs and general maintenance? The $5,500, is that a specific repair or a couple of repairs you did recently?

**Ortiz:** We had to fix up the bathroom. Then we had to fix up the apartment.

**Khaleel:** Ok, but how does that differ from the $20,000 capital improvements down below?

**Lafay:** I believe part of that is the difference between the purchase price and the financing/mortgage.

**Khaleel:** So, that's your down payment and the repair cost is the cost of fixing up the apartment and the bar?

**Ortiz:** Yes.

**Khaleel:** The annual maintenance seems kind of high, can you explain that to me. Because that's meant to be the annual cost of maintaining the building.

**Lafay:** She has a different place of employment full-time, so everything that has to be done has to be hired out. She is not handy to do the repairs herself, so until she can get somebody on board to be a general maintenance person she pays top dollar.

**Khaleel:** Ok. I'd also like to ask if you saw the letter from the 19th Ward Association.

**Lafay:** No.

**Khaleel:** Ok, take this a read it because they are most likely going to speak.

**VanDusen:** I'd like to go back to the rent. I understand the rent includes utilities. It's $400 for a 1-bedroom, 1,000 square foot. The rent seems low to me. I would expect rents in this market to be closer to $500 a month.

**Ortiz:** It depends on the area. This is Chili Avenue. People are scared of the area and you can't make the rents of other areas because they won't move in. When I first started fixing it, I tried renting it for a long time.

**VanDusen:** What were you asking?

**Ortiz:** I was asking $460 and I couldn't get nobody. Everybody said I'm scared and don't want to live around there. So, I had to make it lower to get people in there, so I had some kind of income.

**VanDusen:** The reason I'm asking is because, if the rents are artificially low to get folks there, say, and to keep vacancies down, which I can understand, then you are coming to us for relief. That's a hardship that we have to balance. I understand that on a commercial strip the rents will not be the same as the residential apartments behind your building. I still wonder if $400 with all utilities included for 1,000 square feet...

**Ortiz:** But, if you look around the neighborhood, the rent is similar. The building across the street charges $420. Catire(?) cost $415.

**O'Donnell:** And, those places include utilities as well?

**Ortiz:** Yeh.

**O'Donnell:** Do we have the date of the last request until 2:00 AM?

**Khaleel:** Yes, it was 2010, but we only approved until midnight.

**Ortiz:** No, it was approved until 2:00 AM.

**O'Donnell:** Yes, but you didn't use it and you lost the rights to the variance.

**Ortiz:** Yes, we got the run around, and we came back and were told we lost it and the hours went back to 12:00 AM.

**O'Donnell:** Ok, so we approved until midnight. Was there a prior board that approved until 2:00 AM?

**Voice:** It says here they could operate until 12:00.

**Ortiz:** That was the second time.

**O'Donnell:**  Yes, but she is claiming that prior to that it was until 2:00 AM.

**Khaleel:**  That was back in 2000, a long time ago.

**Ortiz:**  No, that's not right.  When we first bought the building it was that.

**Khaleel:**  Wait, there was a temporary permit to extend the hours to 2:00 AM.

**Ortiz:**  We bought the building in 2008.  We were approved then, and then we came back in 2010.

**Khaleel:**  Ok, I think I have it.  There is a 2011 temporary to extend hours to 2:00 AM.

**Tobin:**  Yes, but only for those dates.

**Khaleel:**  But, then there is live entertainment that we limited to 12:00

**Ortiz:**  No.

**Khaleel:**  According to this you are allowed to be open until 2:00, but the live entertainment is limited to midnight.

**Ortiz:**  No, we close at 12:00.

**Khaleel:**  This only addresses live entertainment until 2:00.  But what you want is to be open until 2:00 AM.

**Ortiz:**  Yes, so I can manage to pay my bills.

**Khaleel:**  Do you want live entertainment until 2:00 AM as well.

**Ortiz:**  Yes.

**Khaleel:**  And, that's every day of the week?

**Ortiz:**   If it can be, yes.  If it can't be then…

**Lafay:**   But, you aren't open every day of the week.

**Ortiz:**   Right, we are closed on Sunday.

**Lafay:**   So, it's Monday through Saturday.

**O'Donnell:**   Is there anyone here that would like to speak in favor of this case?

**Speaker:**   My name is Christopher Downer, 334 Arnett Boulevard.  I am speaking on behalf of Expressive Styles and as the resident DJ for Obsessions Bar and Grille.  We have tried to book several parties before.  For example, for Expressive Styles when we are trying to do a bag sale or something like that, people leave work at a certain time and wouldn't be able to make it by 12:00.  Or they would say that I'm going to run home and by the time I come back I'm not able to get in.  On the other hand, as a DJ nobody comes out until 12:00.  And, I've DJ'd at several clubs in Buffalo and Rochester and nobody comes out until 12:00.  You might see people start to come out about 12:30.  So, extending the hours to 2:00 AM is quite beneficial as the right thing to do for her business as she is losing business because people are saying that they can't book a party because they get the extended time, so we will go with one else that has that extended time.  So,

some people come for like 20 minutes at 11:30 and then they don't come back.

**Speaker:** My name is Terry Stiff-Grannum, owner of 497 Chili Avenue. I support their efforts to expand the hours, but my main concern is the security. We have had problems in the area with hanging out.

**Speaker:** My name is Glen Dougal, 195 Westfield Street. I don't think there are two people more deserving.

**Speaker:** My name is Alex White, 647 S. Clinton Avenue. I am the director of the Good Business Association of Rochester. Normally when I speak to you I try to concentrate on what I consider the big 5 reasons to do something: hardship, whether it fits into the neighborhood, whether the building is accustomed to this or if it creates hardship for the neighbors. But, the problem I see here is that those are all almost negative for this case.

**O'Donnell:** Let me stop you, we are only taking testimony in support.

**White:** I recognize that. What I was about to say is that there is a new code passed where in the old code bars and restaurants were treated the same, so if this bar-restaurant is looked at under the new or old code, New York State grants licenses for them to sell alcohol until 2:00 in the morning and this takes precedent to local laws. Not

granting them an extension would actually be trying to put local law ahead of the State law in court. Rulings have universally favored the State law. This will expose the city to substantial legal action against it, and I feel that it is absolutely essential that you rule in favor of their claim because of the legal ramifications of not doing so.

**Speaker:** I'm Rich Ortiz, me and my wife own 564 Chili Avenue. Being closed at 12:00 is sort of a hardship because people usually go out later in the evening and even if somebody comes at 10 or 10:30 and at 11:30 it's last call, that has hurt us. We serve food all day and run commercials for it on TV and I think our patrons like our food and they come back again and again. By having an extension of hours, we can provide more jobs, like another cook or bartender, added security, which increases jobs for the area. We close at 12:00, but there is a grocery store right next door and they sell beer. Right next door there is a liquor store, and across the street there is another grocery store that sells beer, and at the corner there's another store that sells beer. So you can imagine that our sales for the liquor and beer is not very good until evening when those other establishments are closed around 9:00 or 10:00. My wife still works full-time at Lowe's and I work as a cook at Lew Commons (?) two days a week and we have to

maintain our bills.  I just want to be open until 2:00 so we can at least

hire more people and be there more ourselves.

**O'Donnell:** Can you address the issues with security?

**R. Ortiz:** We hire a security company.  I am a licensed security guard.  My wife

is a licensed security guard also.

**O'Donnell:** What do you do now for security?

**R. Ortiz:** We don't have many parties so there is no need for security.  All we

do is check ID's at the door.  When we have a party we apply for an

extension, you get two per year.  We had one for our daughter's

birthday party and we did have security outside.

**O'Donnell:** The Board did receive a letter from the 19th Ward Community

Association which indicates there have been 38 calls for police

service over the last two years for fights and disorderly conduct and

suspicious criminal activity.  Can you address that?

**R. Ortiz:** Yes, there are a lot of young kids that hang out outside.  We speak to

them all the time and ask them not to hang out.  They do respect us

and they do move.

**O'Donnell:** I know when I visited the property I noticed there was a lot or

loitering on the property, which may be the result of the grocery

store, I'm not sure.  So have the calls been for Obsessions?

**R. Ortiz:** No, there have been no problems inside.

**O'Donnell:** (directing question to Terry Stiff-Grannum in the audience) – What is your experience, have you had any problems personally or witnessed anything?

**Stiff-Grannum:** No, not specifically.

**O'Donnell:** So, your concern is that it is 2:00 AM and what is security like at that time, right?

**Stiff-Grannum:** Yes. There is a lot of hanging out on Chili Avenue, but not in front of their location. Actually, the mini-mart across the street...we've had the chief of police address the problem of hanging out. That's why I wanted to know how they planned on handling their security.

**O'Donnell:** Thank you for clarifying. Is there anyone here that would like to speak in opposition to this application?

**Speaker:** My name is Nana Messiah Suniki, Depew Street. We are talking about community and in the community there are various entities that help make and support the community. We have this business asking to extend their hours to 2:00 AM, I'm hoping that as a community we can look at the pros and cons and come up with a better solution. As someone that has to sleep there, it is a problem,

in terms of the noise, young people hanging out and loitering in the area, and when you have a place open late at night it draws more people to the area. There is loud music from vehicles and people talking, and then dogs start barking, it's a hodgepodge of noise and disturbance of the peace. What time do the residents have to sleep? When you wake up on the morning we are still dealing with the residue of this establishment being open until 2:00 AM. I am opposed to the extended hours but I hope they can help out the community and help with the loitering and the young people hanging out and let us sleep during the week.

**Khaleel:** So, you would support longer hours on Friday and Saturday?

**Suniki:** Yes.

**O'Donnell:** The applicant has a three minute rebuttal.

**Lafay:** I have a question, relating to the letter that said there were 38 calls for service to the establishment. I've represented this bar since it opened and I've represented other bars in the area, it has been my experience that the police are not shy about issuing tickets to the establishment owners if they can establish a link between the illegal activity and it emanating from that particular establishment or business. Not one of these 38 complaints have resulted in a ticket to

my client's place of business. So I think this is a generalized complaint about the things that a happen in the area that have been placed on the shoulders of my client. There is no outdoor activity relating to my clients business, everything is inside.

**Khaleel:** I think what the speaker is saying is that when the bar closes and everyone goes to their cars it gets very noisy getting in their cars and turning on their radios and other things, but it happens. If anyone who lives near a bar or restaurant will tell you that is what happens and it is very disturbing to sleep.

**Lafay:** I will certainly instruct my client to have her tell her customers to respect the neighbors, because what you do out there reflects what I'm doing inside if you want to come back here as responsible adult. Or maybe post signs on the door reminding them to be quiet, that is something we can do.

**Khaleel:** I have a question for Ms. Ortiz. I'm back on the financials because that is a big part of the request, how long does one of your apartments stay vacant until you rent it again.

**J. Ortiz:** I just rented one last month and it was vacant for 6 months.

**Khaleel:** Is that an average or was it due to the renovations?

**J. Ortiz:** No, it's going to the city to get the person out of the apartment and getting it rented again.

**Tobin:** Are you fully rented now?

**J. Ortiz:** Yes, I have three now, one is moving out.

**Khaleel:** Let's say you decide you don't want to be the tenant any more, how much time do you think you would need to rent that space?

**J. Ortiz:** About a year.

**Khaleel:** Why do you think it would take that long?

**J. Ortiz:** Because people will drive around the neighborhood. Before I bought the building the guy had it for five years before he could sell it to anyone and he tried and tried to sell it. Then I thought because it was my neighborhood I thought I could turn things around. So, I tried and it was hard, and I came here requesting help of extended yours, which I got, but I lost it because I didn't have the money. I'm struggling, but I'm hanging in there.

**Khaleel:** What are your thoughts about limiting it to Friday and Saturday nights?

**J. Ortiz:** It would be hard for me, I'm struggling. I have taxes that are due at the end of the month and I'm not making anything. The client lives up the street near another Jamaican restaurant. I do have a security

company that I call. I do have my taxes if you want to see what they are.

**Khaleel:** You listed some other establishments that are close to you; Turn In Tavern...

**J. Ortiz:** I have PI and Eclipse on Thurston Road, and Crosskeys on Thurston Road...

**Khaleel:** Down by Brooks, right?

**J. Ortiz:** No, by the post office. And, Meneze's Pizzeria that is two blocks from me and they are open until 2:00.

**Khaleel:** But, they don't sell alcohol.

**J. Ortiz:** No, but they sell food and I can't compete.

**HEARING IS CLOSED**

I, Zina Lagonegro, Senior Planner in the Department of Neighborhood and

Business Development, Division of Planning and Zoning, transcribed the hearing

tape relating to 564 Chili Avenue to the best of my abilities.

_Zina Lagonegro_         _01|10|13_
Zina Lagonegro         Date

Zina Lagonegro, AICP
City of Rochester
Bureau of Planning and Zoning
30 Church Street, Rm. 125B
Rochester, NY 14614
585-428-7054
Fax 585-428-6137

# SPEAKER'S LIST
# BOARDS AND COMMISSION

**HEARING DATE:**     OCTOBER 18, 2012

**CASE NUMBER:**     8

**FILE NO.:**     V-030-12-13

**PROPERTY ADDRESS:**     564-568 Chili Avenue

**APPLICANT:**     Joan Ortiz, Obsession Bar & Grill

**THE OATH:**     I SOLEMNLY SWEAR TO TELL THE TRUTH IN ALL MATTERS PERTAINING TO THIS CASE.

**PLEASE SIGN THE LIST BELOW:**

| NAME OF SPEAKER | | ADDRESS/ZIP CODE |
|---|---|---|
| **PRINT** | **SIGNATURE** | |
| Anthony F. LaFay, Esq | Anthony P. LaFay | 36 West Main St, #722 Roch. 14614 |
| Nana Maasai Sonekai | Nana Sonekai | Depew St Roch NY 14611 |
| Alex White | Alex White | 647 S. Clinton Ave |
| Christopher Downey | | 334 Arnett Blvd. |
| Joan Ortiz | | 564 Chili AV |
| Richard Ortiz | Richard Ort | 564 Chili Ave |
| Glen Dooger | Glen Dooger | 564 Chili Ave |
| Terry Smith Brown | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**EXHIBIT E**



**City of Rochester, NY**

## VARIANCE
### (SECTION 120- 3)
### BUREAU OF PLANNING AND ZONING
### CITY HALL, 30 CHURCH STREET, ROOM 125B
### ROCHESTER, NEW YORK 14614

# APPLICATION

**APPLICATIONS ARE ACCEPTED BY APPOINTMENT ONLY. To schedule an appointment, please call or e-mail Zina Lagonegro at (585) 428-7054 or zina.lagonegro@cityofrochester.gov**

| Office Use | ☐ **AREA VARIANCE APPLICATION REQUIREMENTS:** |
|---|---|
| ☐ | 1.  Fee: $250.00. |
| ☐ | 2.  One (1) copy of the Denied Certificate of Zoning Compliance (CZC), including signature by a Building Code Plan Reviewer. |
| ☐ | 3.  One (1) copy of the application, including responses to all Area Variance Standards (for area variance only). |
| ☐ | 4.  One (1) copy of the Environmental Assessment Form. |
| ☐ | 5.  One (1) copy of an Instrument Survey Map. |
| ☐ | 6.  Three (3) copies of a scaled site plan. |
| ☐ | 7.  One (1) copy of a scaled floor plan. |
| ☐ | 8.  One (1) copy of scaled elevations of proposed structures, or facade renovations to existing structures. |
| ☐ | 9.  One (1) copy of site plan, floor plan, elevation or other drawing no larger than 8-1/2" x 11". |
| ☐ | 10.  Photographs of the subject site, structures on the site, and surrounding properties. |

| Office Use | ☐ **USE VARIANCE APPLICATION REQUIREMENTS:** |
|---|---|
|  | **All of the above documents 1-10, plus:** |
| ☐ | 1.  One (1) copy of the completed Statement of Unnecessary Hardship. |
| ☐ | 2.  One (1) copy of the completed Statement of Income and Expense. |

## IMPORTANT
♦  Completed applications must be submitted before the published deadline.
♦  Applications must be submitted in the appropriate number as specified above.

## POSTING REQUIREMENT
After submission of a complete application, a public notification sign will be issued and must be posted on the property at least 20 days prior to the hearing. The sign shall be placed on the property readily visible from the public right-of-way. It is the applicant's responsibility to obtain and post the sign. Signs are available in Room 125B, City Hall.

**What is an Area Variance?** An Area Variance is authorization by the Zoning Board of Appeals for the use of land in a manner that is not permitted by regulations of Zoning Ordinance related to: a dimension, such as size, height and setback; physical requirements; the expansion, structural alteration or enlargement of a nonconforming use; a waiver of additional requirements for specified uses; any City-wide or Village Center design standards.

**What is a Use Variance?** A Use Variance is authorization by the Zoning Board of Appeals for the use of land for a purpose that is otherwise not allowed or is prohibited by the Zoning Ordinance.

**[FOR OFFICE USE ONLY]**

ADDRESS: _____    FILE NUMBER: _____

DATE FILED: _____    FEE: _____

# PROJECT INFORMATION

**PLEASE TYPE OR PRINT**

1. **PROJECT ADDRESS(ES):** 564-568 Chili Avenue, Rochester, NY 14611

2. **APPLICANT:** JOAN C. ORTIZ   **COMPANY NAME:** OBSESSION BAR & GRILL, INC.

   **ADDRESS:** 94 McNaughton Street   **CITY** Rochester, NY   **ZIP CODE:** 14606

   **PHONE:** (585) 576-5917   **FAX:** _____

   **E-MAIL ADDRESS** _____

   **INTEREST IN PROPERTY:** Owner __XXX__   Lessee _____   Other _____

3. **PLAN PREPARER:** Joan C. Ortiz

   **ADDRESS:** _____   **CITY:** _____   **ZIP CODE:** _____

   **PHONE:** _____   **FAX:** _____

   BUILDING BUREAU
   ROOM 121

4. **ATTORNEY:** Anthony P. LaFay, Esq.

   3:20PM   Sep 17/12
   01-0002 001   LISA
   #53777

   **ADDRESS:** 36 West Main St.,#770   **CITY** Rochester, NY   **ZIP CODE:** 14614

   Zoning   $250.00

   **PHONE:** 585-325-4064   **FAX:** 585-325-5362   564 CHILI AV

   **E-MAIL ADDRESS** _____

   \$TTL       $250.00
   CHECK       $90.00
   INFO     564 CHILI AV
   CASH      $160.00

5. **ZONING DISTRICT:** C-1

6. **DETAILED PROJECT DESCRIPTION (additional information can be attached):** _____

   Application for permission to extend the business hours of operation
   to 2:00 am from Monday through Saturday, instead of to 12:00 midnight

   _____

   _____

7. **LENGTH OF TIME TO COMPLETE PROJECT (Attach schedule if phased:)** _____

**APPLICANT: I certify that the information supplied on this application is complete and accurate, and that the project described, if approved, will be completed in accordance with the conditions and terms of that approval.**

**SIGNATURE:** _Joan C. Ortiz_   **DATE:** September 14, 2012
   Joan C. Ortiz

**OWNER (if other than above): I have read and familiarized myself with the contents of this application and do hereby consent to its submission and processing.**

**SIGNATURE:** _Joan C. Ortiz_   **DATE:** Sep 17. 2012



**City of Rochester, NY**

USE VARIAN ~~
**STATEMENT OF INCOME AND EXPENSE**

**PLEASE NOTE:** AT HEARING TIME, APPLICANTS MAY BE ASKED TO PROVIDE AT LEAST TWO (2) CALENDAR YEARS OF FINANCIAL INFORMATION, OR FROM THE DATE OF PURCHASE, WHICHEVER IS LESS.

**PROPERTY ADDRESS:** 564-568 Chili Avenue, Rochester, N.Y. 14611

**A.  PROPERTY DATA**

1.  **Date property was purchased by current owner** _January 15, 2008_

2.  **Was a Certificate of Occupancy issued?** _Yes_

    **Date of issuance?** _December 18, 2007_

    **If so, for what use(s)?** _to re-establish the former use of the property as a restaurant and bar._

    **If not, why?** _____

3.  **Cost of Purchase** _$70,000.00_

4.  **Original Amount of Mortgage(s)** _$50,000.00_

    **Mortgage Holder(s)** _Campanella & Archibald Corporation_

    **Address** _7117 Wildwood Lane, Victor, New York 14564_

    **Interest Rate(s)** _8%_     **Term of mortgage(s)** _5 years_
    _balloon payment due February 1, 2013_

5.  **Is the property for sale?** _No_

    **If so, for how long?** _-------_

        **asking price?** _-------_

        **for what use(s)** _------_

    **Have any offers been received?** _--------_

    **If so, for what amount(s)?** _-------_

    **Summarize any attempts to sell the property** _none_

    _____
    _____

6.  **Present value of property** _Monroe County assessment is $58,100.00 and the_
    **Source of valuation** _City of Rochester assessment is $70,000.00_
    _city and county tax records_

01/2011

**B.** GROSS ANNUAL INCOME ~formation provided must be for per~ted uses, not the proposed use)

| USE<br>(# of Apts., Retail Store, Office, etc.) | UNIT SIZE<br>(sq. ft.; # of bedrooms) | MONTHLY RENT<br>AMOUNT | ANNUAL RENT<br>AMOUNT |
|---|---|---|---|
| 1. apartment | 1 bedroom 1,000 sq.ft. | $400.00 | $4,800.00 |
| 2. apartment | 1 bedroom 1,000 sq.ft. | $400.00 | $4,800.00 |
| 3. apartment | 1 bedroom 1,000 sq.ft. | $400.00 | $4,800.00 |
| 4. bar/restaurant | 3,600 sq.ft. | $0.00 | $0.00 |
| 5. The owner operates the restaurant/bar and had a net loss of $10,348.00 for | | | |
| 6. the 2011 tax year | | | |

| | |
|---|---|
| TOTAL ANNUAL INCOME: | 14,400.00 |
| LESS (8%) VACANCY FACTOR:<br>(Explain, if greater than 8%) | 1,152.00 |
| TOTAL ADJUSTED GROSS INCOME: | $13,248.00 |

**C.** ANNUAL EXPENSES

1. **Annual Fixed Charges**

| | |
|---|---|
| Real Estate Taxes (City & County)...County $889.10 City $4,081.00 | $4,970.10 |
| Insurance................................................................. | 1,202.00 |
| Average Annual Interest (over next 5 years)................ | 3,200.00 |

2. **Operating Expenses**

| | |
|---|---|
| Electric.................................................................... | 7,500.00 |
| Fuel......................................................................... | 7,300.00 |
| Water....................................................................... | 700.00 |
| Pure Waters............................................................. | 850.00 |
| Advertising............................................................... | 6,000.00 |
| Miscellaneous (attach explanation) sports bar package...... | 2,200.00 |

3. **Maintenance Expenses** (attach list)

| | |
|---|---|
| Repairs.................................................................... | 5,500.00 |
| General Building Maintenance................................... | 7,500.00 |
| Yard and Ground Care.............................................. | 0.00 |
| Miscellaneous.......................................................... | 1,000.00 |
| TOTAL ANNUAL EXPENSES: | $ 35,382.00 |
| PROFIT or (LOSS)       LOSS!!! | $ 22,134.00 |

**D.** TOTAL INVESTMENT

| | |
|---|---|
| 1. Down payment...................................................... | $20,000.00 |
| 2. Capital Improvements (attach list)......................... | $20,000.00 |
| 3. Principal paid to date (original mortgage less current principal balance)................................................. | $32,100.16 |
| TOTAL INVESTMENT: | $72,100.00 |

**E.** RATE OF RETURN/YR. [Profit or Loss divided by Total Investment] = 0.30

SIGNATURE OF PREPARER *Anthony P. LaFay*   DATE Sept. 14, 2012

Anthony P. LaFay

01/2011



# USE VARIANCE
## STATEMENT OF UNNECESSARY HARDSHIP

**City of Rochester, NY**

**A use variance shall be granted only if the applicant can establish the existence of <u>EACH</u> of the following, in accordance with Section 120-195B(3) of the Zoning Ordinance:**

**A. No reasonable return.** The subject property is not capable of yielding a reasonable rate of return if used for its present use or developed, redeveloped or used for **any other use** permitted in the district in which the property is located. There is no means other than the granting of the variance by which the property can yield a reasonable return. Such inability to yield a reasonable return must be shown by specific fact, and not the unsupported opinion of the owner or those appearing for the owner.

The applicant opened for business in October 2011, nearly 3 years after she purchased the property. Part of that delay was due to not having the proper authorization to conduct the restaurant business and part was due to lack of funds to perform necessary repairs and upgrades to the property. The apartments have generally sustained the operation. The applicant has been told by customers that her lack of success is due to the fact that she must close her doors at midnight- the time when most potential customers are going out for the evening. Since she is closed, they go to different restaurants and bars, several of which are walking distance from the applicant's place of business.

**B. Unique circumstances.** The inability to yield a reasonable return results from a unique circumstances peculiar to the subject property which do not apply to or affect other properties in the immediate vicinity that are subject to the same regulations. The personal situation of the owner shall not be considered a unique circumstance.

The unique circumstances which results in the applicant's failure to yield a reasonable return on her investment is that she must close her doors at midnight just when her competitors are welcoming customers at their busiest time. They all have permission to remain open until 2:00 am. The applicant was previously given permission to remain open until 2:00 am, however she lost that privilege because she was not able to open for business before the permission expired.

**C. Not self created.** The inability to yield a reasonable return is not the result of any action or inaction by the owner or their predecessors in title. Acquisition or improvement of the subject property at any time after the enactment of the provision sought to be varied shall raise a rebuttable presumption that the owner's inability to realize a reasonable return is the result of the owner's action.

The applicant's inability to secure a reasonable return on her investment is not the result of any action or deliberate inaction on her part- finances or lack thereof, prevented her from opening for business within the time limit and now the loss of the right to remain open until 2:00 am is the reason that she cannot compete for late night business.

01/2011

**D.  Essential character of the area - surrounding uses and facilities.**  The granting of the variance will not be materially detrimental to the public health, safety, and welfare or injurious to the enjoyment, use, or development of neighboring properties and the community or the general plan (i.e. Zoning Ordinance and Comprehensive Plan intent).

The essential character of the area will not change if this application is granted. The applicant will be allowed to conduct business just as her nearby competitors do and it will have no impact on the area or surrounding uses and facilities.

**E.  No other remedy.**  There is no means other than the granting of the variance by which the hardship can be avoided or remedied to permit the economic use of the subject property.

The applicant believes that there is no other viable means by which her hardship can be avoided, except by allowing her to compete for the same customers as her competitors on a equal basis. The applicant offers food and drink and live entertainment at her place of business, but her customers all have to leave at midnight and they then join their friends at other neighborhood establishments. The customers would mostly remain at her place of business after midnight, if she didn't have to close.

Some of the applicant's nearby competitors who can remain open until 2:00 am are the following:

TURN IN TAVERN  651 Chili Ave.,Rochester, NY 14611 (585) 235-4640

ECLIPSE BAR & LOUNGE 374 Thurston Rd., Rochester, NY 14618 585-235-9409

THURSTON BAR & GRILL 529 Thurston Rd., Rochester, NY 14619 585-235-9653

JULIUS CAFE, INC. 543 Thurston Rd., Rochester, NY 14619

CLASSICS BAR & GRILL, LLC 685 Thurston Rd., Rochester, NY 14619
585-235-4260

PI's LOUNGE 1  499 West Ave., Rochester, NY 14611  585-235-1630



**City of Rochester, NY**

# CITY OF ROCHESTER
Environmental Assessment Form
(to be completed by applicant/initiator)

### SHORT FORM

<table>
<tr><td colspan="2" align="center"><b>FOR CITY USE ONLY</b></td></tr>
<tr><td colspan="2">Project I.D. (File) No(s).:_____</td></tr>
<tr><td colspan="2">Project Title:_____</td></tr>
<tr><td colspan="2">Date Filed:_____</td></tr>
<tr><td colspan="2">Lead Agency:_____</td></tr>
<tr><td colspan="2">Review By:_____</td></tr>
<tr><td colspan="2">Determination Recommendation:  [ ]  1.  No significant impact<br>                                       [ ]  a.  No mitigation period required<br>                                       [ ]  b.  Mitigation period required<br>                       [ ]  2.  EIS required<br>                       [ ]  3.  Long Form required</td></tr>
<tr><td colspan="2">Fee Paid: $_____  (have form stamped or attach receipt)</td></tr>
</table>

### PART I - Project Information

**AFFIDAVIT**

"I affirm that the information provided herein is true and I understand that this application will be accepted for all purposes as the equivalent of an affidavit, and if it contains a material false statement, shall subject me to the same penalties for perjury as if I had been duly sworn."

Completed by:

| Anthony P. LaFay | *Anthony P. LaFay* | Sept. 14, 2012 |
|---|---|---|
| Name (type or print) | Signature | Date |

1. **APPLICANT/INITIATOR INFORMATION**

   A. Name of Applicant(s)/Initiator(s): JOAN C. ORTIZ d/b/A Obsession Bar & Grill, I

   Address: 94 McNaughton Street

   City: Rochester    State: N Y    Zip Code: 14606

   Phone: 585-576-5917    Fax: none

   E-mail Address: _____

   B. Name of Agency/Individual preparing this form: Anthony P. LaFay, Esq.

   Address: 36 West Main Street, Suite 770

   City: Rochester    State: New York    Zip Code: 14614

   Contact Person: Anthony P. LaFay  E-mail Address: _____

   Phone: 585-325-4064    Fax: 585-325-5362

2. **PROJECT DATA**

A. Attach a project location map, site plan, elevations and proposed landscaping plans.

B. Property Location: __564-568 Chili Avenue, Rochester, N.Y. 14611__

C. Total land areas: __3,646 square feet__

D. Tax Account No. (SBL): __120.55-3-16.001__

E. **DETAILED PROJECT DESCRIPTION** (include all development or redevelopment of the project site and proposed use(s):

__The applicant does not propose any construction or renovations__
__of any kind. She merely wishes to extend the hours of her__
__bar & grill business to 2:00 am Mondays through Saturdays__
__and closed on Sunday.__

01/01/08

## 3. ENVIRONMENTAL INDICATORS

Are any of the following land uses or environmental resources either to be affected by the proposal or located within or adjacent to the project site(s)?  Check appropriate box for **every** item of the following checklist:

|  |  | Yes | No | Unk |  |  | Yes | No | Unk |
|---|---|---|---|---|---|---|---|---|---|
| a. | Industrial | [ ] | [x] | [ ] | t. | Freshwater Wetlands designated by DEC | [ ] | [x] | [ ] |
| b. | Commercial | [ ] | [X] | [ ] | | | | | |
| c. | Office | [ ] | [X] | [ ] | u. | Floodplain as designated by Federal Insurance Administration | [ ] | [x] | [ ] |
| d. | Residential | [ ] | [x] | [ ] | | | | | |
| e. | Utilities | [ ] | [X] | [ ] | | | | | |
| f. | Parking | [ ] | [x] | [ ] | v. | Within 100' of Genesee River, River Gorge, Erie Canal, Lake Ontario | [ ] | [x] | [ ] |
| g. | Streets | [ ] | [x] | [ ] | | | | | |
| h. | Parks | [ ] | [x] | [ ] | | | | | |
| i. | Hospitals | [ ] | [x] | [ ] | w. | Scenic views or vistas of importance to the community. | [ ] | [x] | [ ] |
| j. | Schools | [ ] | [X] | [ ] | | | | | |
| k. | Open Spaces | [ ] | [x] | [ ] | | | | | |
| l. | Steep Slopes (15% or greater) | [ ] | [X] | [ ] | x. | Wildlife, including habitats | [ ] | [x] | [ ] |
| m. | Mature trees | [ ] | [x] | [ ] | y. | Air quality | [ ] | [x] | [ ] |
| n. | Shoreline | [ ] | [x] | [ ] | z. | Historical, archaeological sites (listed on National Register or eligible for listing) and/or designated City Landmarks/Preservation District | [ ] | [x] | [ ] |
| o. | Erodible Soils | [ ] | [x] | [ ] | | | | | |
| p. | Energy Supplies | [ ] | [X] | [ ] | | | | | |
| q. | Hazardous Materials | [ ] | [x] | [ ] | | | | | |
| r. | Natural Drainage Course, Stream or other water body | [ ] | [x] | [ ] | | | | | |
| s. | Ambient noise levels | [ ] | [X] | [ ] | | | | | |

4.  Are any facilities under your ownership, lease, or supervision to be utilized in the accomplishment of this project, either listed or under consideration for listing on the Environmental Protection Agency's List of Violating Facilities?  [ ] Yes     [x ] No

5.  Is there public controversy concerning the project?     [ ] Yes     [x ] No
    If yes, explain: _____

## 6. PRIOR REVIEW

A.  Has an environmental impact statement (EIS)/analysis been prepared for this project or a project inclusive of this project at an earlier date?     [X ] Yes     [ ] No

If yes, identify the EIS/analysis, including the date of preparation and the agency for which it was prepared or attach a copy   The applicant believes that an EIS was submitted in 2008 when she applied for a variance to re-open and re-establish the restaurant business after a lapse of several years.

B.  Has the State Historic Preservation Officer (SHPO) been provided a detailed project description and been requested to comment thereon?  [ ] Yes     ⊠ No
    Date submitted to SHPO:_____

7. Identify **all** governmental actions (i.e. funding, permits, approvals, leases, etc.) necessary for project implementation:

| Level of Government & Agency | Type of Action | Status | Project ID# |
|---|---|---|---|

Federal           none

State          New York State Liquor Authority has already granted the applicant a license. She only needs the City of Rochester's permission to extend her hours of operation to 2:00 am.

Local          See above.

8. **SUMMARY OF ISSUES**
List the potential environmental impacts/issues as identified by responses to sections 3, 4, 5 and 6 above. Discuss alternatives and mitigation measures for these issues.

There are no potential environmental issues identified by the responses to sections 3,4,5 and 6.

## 564 Chili Avenue - Ortiz

Compound Period ........ : Monthly

Nominal Annual Rate ... : 9.000 %

### CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 01/01/2008 | 50,000.00 | 1 | | |
| 2 | Payment | 02/01/2008 | 633.38 | 59 | Monthly | 12/01/2012 |
| 3 | Payment | 01/01/2013 | 31,145.29 | 1 | | |

### AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| | | | | | 50,000.00 |
| Loan | 01/01/2008 | | | | 49,741.62 |
| 1 | 02/01/2008 | 633.38 | 375.00 | 258.38 | 49,481.30 |
| 2 | 03/01/2008 | 633.38 | 373.06 | 260.32 | 49,219.03 |
| 3 | 04/01/2008 | 633.38 | 371.11 | 262.27 | 48,954.79 |
| 4 | 05/01/2008 | 633.38 | 369.14 | 264.24 | 48,688.57 |
| 5 | 06/01/2008 | 633.38 | 367.16 | 266.22 | 48,420.35 |
| 6 | 07/01/2008 | 633.38 | 365.16 | 268.22 | 48,150.12 |
| 7 | 08/01/2008 | 633.38 | 363.15 | 270.23 | 47,877.87 |
| 8 | 09/01/2008 | 633.38 | 361.13 | 272.25 | 47,603.57 |
| 9 | 10/01/2008 | 633.38 | 359.08 | 274.30 | 47,327.22 |
| 10 | 11/01/2008 | 633.38 | 357.03 | 276.35 | 47,048.79 |
| 11 | 12/01/2008 | 633.38 | 354.95 | 278.43 | |
| 2008 Totals | | 6,967.18 | 4,015.97 | 2,951.21 | |
| 12 | 01/01/2009 | 633.38 | 352.87 | 280.51 | 46,768.28 |
| 13 | 02/01/2009 | 633.38 | 350.76 | 282.62 | 46,485.66 |
| 14 | 03/01/2009 | 633.38 | 348.64 | 284.74 | 46,200.92 |
| 15 | 04/01/2009 | 633.38 | 346.51 | 286.87 | 45,914.05 |
| 16 | 05/01/2009 | 633.38 | 344.36 | 289.02 | 45,625.03 |
| 17 | 06/01/2009 | 633.38 | 342.19 | 291.19 | 45,333.84 |
| 18 | 07/01/2009 | 633.38 | 340.00 | 293.38 | 45,040.46 |
| 19 | 08/01/2009 | 633.38 | 337.80 | 295.58 | 44,744.88 |
| 20 | 09/01/2009 | 633.38 | 335.59 | 297.79 | 44,447.09 |
| 21 | 10/01/2009 | 633.38 | 333.35 | 300.03 | 44,147.06 |
| 22 | 11/01/2009 | 633.38 | 331.10 | 302.28 | 43,844.78 |
| 23 | 12/01/2009 | 633.38 | 328.84 | 304.54 | 43,540.24 |
| 2009 Totals | | 7,600.56 | 4,092.01 | 3,508.55 | |
| 24 | 01/01/2010 | 633.38 | 326.55 | 306.83 | 43,233.41 |
| 25 | 02/01/2010 | 633.38 | 324.25 | 309.13 | 42,924.28 |
| 26 | 03/01/2010 | 633.38 | 321.93 | 311.45 | 42,612.83 |
| 27 | 04/01/2010 | 633.38 | 319.60 | 313.78 | 42,299.05 |
| 28 | 05/01/2010 | 633.38 | 317.24 | 316.14 | 41,982.91 |
| 29 | 06/01/2010 | 633.38 | 314.87 | 318.51 | 41,664.40 |
| 30 | 07/01/2010 | 633.38 | 312.48 | 320.90 | 41,343.50 |

564 Chili Avenue - Ortiz

|    | Date       | Payment   | Interest | Principal | Balance   |
|----|------------|-----------|----------|-----------|-----------|
| 31 | 08/01/2010 | 633.38    | 310.08   | 323.30    | 41,020.20 |
| 32 | 09/01/2010 | 633.38    | 307.65   | 325.73    | 40,694.47 |
| 33 | 10/01/2010 | 633.38    | 305.21   | 328.17    | 40,366.30 |
| 34 | 11/01/2010 | 633.38    | 302.75   | 330.63    | 40,035.67 |
| 35 | 12/01/2010 | 633.38    | 300.27   | 333.11    | 39,702.56 |
| 2010 Totals |     | 7,600.56  | 3,762.88 | 3,837.68  |           |
| 36 | 01/01/2011 | 633.38    | 297.77   | 335.61    | 39,366.95 |
| 37 | 02/01/2011 | 633.38    | 295.25   | 338.13    | 39,028.82 |
| 38 | 03/01/2011 | 633.38    | 292.72   | 340.66    | 38,688.16 |
| 39 | 04/01/2011 | 633.38    | 290.16   | 343.22    | 38,344.94 |
| 40 | 05/01/2011 | 633.38    | 287.59   | 345.79    | 37,999.15 |
| 41 | 06/01/2011 | 633.38    | 284.99   | 348.39    | 37,650.76 |
| 42 | 07/01/2011 | 633.38    | 282.38   | 351.00    | 37,299.76 |
| 43 | 08/01/2011 | 633.38    | 279.75   | 353.63    | 36,946.13 |
| 44 | 09/01/2011 | 633.38    | 277.10   | 356.28    | 36,589.85 |
| 45 | 10/01/2011 | 633.38    | 274.42   | 358.96    | 36,230.89 |
| 46 | 11/01/2011 | 633.38    | 271.73   | 361.65    | 35,869.24 |
| 47 | 12/01/2011 | 633.38    | 269.02   | 364.36    | 35,504.88 |
| 2011 Totals |     | 7,600.56  | 3,402.88 | 4,197.68  |           |
| 48 | 01/01/2012 | 633.38    | 266.29   | 367.09    | 35,137.79 |
| 49 | 02/01/2012 | 633.38    | 263.53   | 369.85    | 34,767.94 |
| 50 | 03/01/2012 | 633.38    | 260.76   | 372.62    | 34,395.32 |
| 51 | 04/01/2012 | 633.38    | 257.96   | 375.42    | 34,019.90 |
| 52 | 05/01/2012 | 633.38    | 255.15   | 378.23    | 33,641.67 |
| 53 | 06/01/2012 | 633.38    | 252.31   | 381.07    | 33,260.60 |
| 54 | 07/01/2012 | 633.38    | 249.45   | 383.93    | 32,876.67 |
| 55 | 08/01/2012 | 633.38    | 246.58   | 386.80    | 32,489.87 |
| 56 | 09/01/2012 | 633.38    | 243.67   | 389.71    | 32,100.16 |
| 57 | 10/01/2012 | 633.38    | 240.75   | 392.63    | 31,707.53 |
| 58 | 11/01/2012 | 633.38    | 237.81   | 395.57    | 31,311.96 |
| 59 | 12/01/2012 | 633.38    | 234.84   | 398.54    | 30,913.42 |
| 2012 Totals |     | 7,600.56  | 3,009.10 | 4,591.46  |           |
| 60 | 01/01/2013 | 31,145.29 | 231.87   | 30,913.42 | 0.00      |
| 2013 Totals |     | 31,145.29 | 231.87   | 30,913.42 |           |
| Grand Totals |    | 68,514.71 | 18,514.71 | 50,000.00 |          |

564 Chili Avenue - Ortiz

Last interest amount increased by 0.02 due to rounding.



# DENIED CERTIFICATE OF ZONING COMPLIANCE FORM

0564 CHILI AV _14611_     CERTIFICATE # : __1121864__

III. STAFF REVIEW: TO BE COMPLETED BY ZONING STAFF:

1. ZONING DIST : __C-1__     DIST BOUNDARY LOT : __Y__   PRES/LANDMARK : __N__

DESIGNATED BUILDING OF VALUE: __N__

CURRENT LEGAL USE: __MIXED USE__

BASIS FOR LEGAL USE: __C OF O__

2. APPLICATION DENIED PURSUANT TO CODE SECTION{S}: __120-34__

APPLICATION DENIED DUE TO OUTSTANDING NOTICE OF VIOLATION NO: __000000__

SPECIFIC REASON FOR DENIAL:
__INTENSIFICATION OF A NONCONFORMING USE REQUIRES A USE VAR__

FOR APPLICATIONS DENIED PURSUANT TO CODE, THE FOLLOWING FORM{S} OF RELIEF IS/ARE AVAILABLE:

{   } Site Plan Review{Major}    {   } Area Variance     { X } Use Variance

{   } Site Plan Review{Minor}    {   } Certificate of Appropriateness   } Special Permits

{   } Certificate of Nonconformity{   } Administrative Resubdivision   } Zoning Map Amendment

{   } Administrative Adjustment   {   } Subdivision     {   } Planned Development

{   }

Environmental Assessment Form Required {EAP}?

_____      __9/12/12__
MANAGER OF ZONING {STAFF}       DATE

A PRELIMINARY REVIEW FOR COMPLIANCE WITH THE NEW YORK STATE UNIFORM FIRE PREVENTION AND BUILDING CODE MUST BE COMPLETED PRIOR TO APPLYING FOR ANY OF THE SPECIFIED FORMS OF RELIEF NOTED ABOVE.

I __N/A__ , have conducted a preliminary review of the project
{Plan Review}
for compliance with the N.Y. State Fire Prevention and Building

_____ Project is in Compliance
_____ More detailed information or plans required
_____ A Variance from the Building Code is required
_____ Contract document signed and sealed by a design professional is required by NYS





Chili Avenue
Floor Plan

**EXHIBIT F**



**216 Thurston Road**
**Rochester NY 14619**

To: Zoning Board, City of Rochester

From: 19th Ward Community Association

Date: October 18, 2012

Re: 564 Chili Avenue

The 19th Ward Community Association, in December, 2007, supported the application for 564 Chili Avenue to establish a bar/restaurant on the first floor of a mixed-use building, located in a C-1 District, provided that it adhered to all the regulations of a C1 district, including a closing time of 11:00 p.m. and no live entertainment. This was to protect the rights of homeowners of adjacent properties located in an R-1 district. The owner was granted a closing time of 12 a.m.

We feel that circumstances have not changed at this location to merit a change in the hours of operation. There have been 38 calls to the police in the last two years for vice, fights, and disorderly and suspicious criminal activity. This is not a credible record to merit a 2:00 a.m. closing. Extending the closing time will merely extend the time that there will be disturbance to the surrounding neighborhood. We strongly suggest that the closing time for this establishment be kept at 12:00 a.m.

_Adrienne M Fells_ _____ Zoning Committee

_Oellaia Felles_ amk _____ President, 19th WCA

October 17, 2012

To Whom IT May Concern,

My name is Michelle Bowes and I own and operate Xpressive Styles Beauty salon and Clothing.

I have known Joan Ortiz for the past 4 years and within that time we have developed a very good business relationship. It's our intention to have various shows at Obsession Bar and Grill, but unfortunately her closing time does not afford us that opportunity.

W e do recommend Obsession Bar and grill the extended opening hours they are requesting.


Yours Faithfully

Michelle Bowes

Xpressive Styles

Dear Sir/ Madam.

10/19/12

To Whom It May Concern

I Izora Manhertz accept the 2: AM closing at Obsession Sport Bar & Grill, it is a very nice place. There is no violence and everyone could have a good time.

Sincerely,

*Izora Manhertz*

Izora Manhertz

EXHIBIT I

Dear Sir/ Madam.

To Whom This May Concern

My name is Trina Beckford, it very rare we get a chance to support our neighborhood businesses as to how they operate in our community and I do support 2: AM closing at Obsession Sports Bar & Grill. I have taken friends to celebrate and enjoy her excellent cuisine both American & Caribbean food.

Coming to the establishment not only for it's food but the music which most place do not play a mixture of 60's, 70's, 80's, and early genre, it is also convenient and close to home which allow me to make a healthy meal choice if I finish working late as most people do.

It is an entertainment place from the comfort of your home to meet people you don't know, in an environment secured and safe.

Thank you all for taking the time to read my letter.

Yours Truly,

Trina Beckford

To the members of the Governing Body;

To Whom This May Concern

Obsession Sports Bar & Grill located at 564 Chili Ave., Rochester NY 14611, venue has been open for the past year and unable to book evening event based on time required by event planners. As resident DJ I have tried to book parties for clients who work during the day and need to start their events at 10: PM and this would extend over to 1: PM in the morning but been unable to maintain these hours for clients all parties had to be booked at different venue.

At this rate she is force to only take advantage of two to three on the nights we promote for Wednesday, Thursday, and Saturday including Sunday for Football games and with individuals, family, friends been unable to watch a game and celebrate after, people like the above mention people see no reason to watch the game one place and celebrate it at another location as the venue they were at need to be close.

Not that I only support the establishment been granted licenses to open until 2: AM but I look at the people who would be offered a position to work and support themselves in this tough economy we live in today. During the year Obsession Sports Bar & Grill has open it's door the Owners have kept the place going but will not endure a prosperous business if they are been denied the resource what is need to maintain the above mention business.

I can understand the issues that arise as a body to make sure the business follow rules and regulations and as a point they have for the year as the functions that was kept, where organize and manned with adequate security to make sure thing was in order.

Thanking you in advance your kindness to the business and it patrons and myself the resident DJ.

Sincerely Yours,

Christopher Downer

Lillian Beauty Supply
554 Chili Avenue
Rochester NY 14611
Tel #585-857-8597

October 16, 2012

To whom it May Concern:

I am writing from the above business, in lending my Support to Mrs Joan Ortiz Owner of Obession Bar & Grill, at 564 Chili Ave Rochester Ny.

She is requesting that her time to opening her business be extended, and I support the hours she requested, in making her business sucessful.

If you feel the need for any further question, I can be contact at the above number.

your Sincerly
ms. Debra Mais
Business Owner.

EXHIBIT I



## Use Variance

---

**Case # 8:**                                          Staff Reviewer:  Zina Lagonegro

**File Number:**        V-030-12-13

**Applicant:**          Joan Ortiz, Obsessions Bar and Grill

**Address:**            564 Chili Avenue

**Zoning District:**    C-1 Neighborhood Center District

**Section of Code:**    120-199E

**Request:**            **To extend the hours of operation of a bar/restaurant with live
entertainment from 12:00am – 2:00am, 7 days a week, a
prohibited use in the C-1 zone.**

*Letter submitted from 19th Ward*

**Analysis:**

The subject property is a legal bar/restaurant with live entertainment which was granted a
Use Variance to operate as such until midnight only in 2010.   The applicant is now applying
to extend the hours of operation until 2am, 7 days a week.

**Code Compliance:**

Section 120-34 does not permit a bar/restaurant with live entertainment as of right in the C-1
zone.

**Code Enforcement:**  There are no open cases for this property.

(+ Joan Ortiz)

Anthony Latagno represented (attny for applicant) –
— states that the applicant is operating
at a handicap bec she has to close at 12
— submitted letters or petitions

Questions: RH – problem w/ the financials –
cannot be zero – "if I were
renting this bar/rest, what would
I get" –
Ans: possibly $2,500 month, which
makes the hardship even greater
Joe - so it makes it a wash bec she

# PROJECT INFORMATION

**PLEASE TYPE OR PRINT**

1. **PROJECT ADDRESS(ES):** 564-568 Chili Avenue, Rochester, NY 14611

2. **APPLICANT:** JOAN C. ORTIZ          **COMPANY NAME:** OBSESSION BAR & GRILL, INC.

   **ADDRESS:** 94 McNaughton Street     **CITY** Rochester, NY   **ZIP CODE:** 14606

   **PHONE:** (585) 576-5917             **FAX:**

   **E-MAIL ADDRESS**

   **INTEREST IN PROPERTY:  Owner** XXX    **Lessee** _____    **Other** _____

3. **PLAN PREPARER:** Joan C. Ortiz

   **ADDRESS:**                          **CITY:**              **ZIP CODE:**

   **PHONE:**                            **FAX:**

4. **ATTORNEY:** Anthony P. LaFay, Esq.

   **ADDRESS:** 36 West Main St.,#770    **CITY:** Rochester, NY   **ZIP CODE:** 14614

   **PHONE:** 585-325-4064               **FAX:** 585-325-0362

   **E-MAIL ADDRESS**

5. **ZONING DISTRICT:** C-1

   ```
   BUILDING BUREAU
   ROOM 121
   3:20PM    Sep 17/12
   01-0002 001   LISA
   #55777
   Zoning    $250.00
   564 CHILI AV
   *TTL      $250.00
   CHECK      $90.00
   INFO   564 CHILI AV
   CASH      $160.00
   ```

6. **DETAILED PROJECT DESCRIPTION (additional information can be attached):** _____

   _Application for permission to extend the business hours of operation_

   _to 2:00 am from Monday through Saturday, instead of to 12:00 midnight_

7. **LENGTH OF TIME TO COMPLETE PROJECT (Attach schedule if phased:)** _____

**APPLICANT:** I certify that the information supplied on this application is complete and accurate, and that the project described, if approved, will be completed in accordance with the conditions and terms of that approval.

**SIGNATURE:** _Joan C. Ortiz_          **DATE:** September 14, 2012
                Joan C. Ortiz

**OWNER (if other than above):** I have read and familiarized myself with the contents of this application and do hereby consent to its submission and processing.

**SIGNATURE:** _Joan C. Ortiz_          **DATE:** Sep 17. 2012



City of Rochester, NY

# USE VARIAN E
## STATEMENT OF INCOME AND EXPENSE

**PLEASE NOTE:** AT HEARING TIME, APPLICANTS MAY BE ASKED TO PROVIDE AT LEAST TWO (2) CALENDAR YEARS OF FINANCIAL INFORMATION, OR FROM THE DATE OF PURCHASE, WHICHEVER IS LESS.

PROPERTY ADDRESS: 564-568 Chili Avenue, Rochester, N.Y. 14611

A. **PROPERTY DATA**

1. Date property was purchased by current owner ___ January 15, 2008 ___

2. Was a Certificate of Occupancy issued? __ Yes ___

    Date of issuance? December 18, 2007 ___

    If so, for what use(s)? to re-establish the former use of the property as a restaurant and bar.

    If not, why? _____

3. Cost of Purchase $70,000.00 ___

4. Original Amount of Mortgage(s) ___ $50,000.00 ___

    Mortgage Holder(s) Campanella & Archibald Corporation ___

    Address 7117 Wildwood Lane, Victor, New York 14564 ___

    Interest Rate(s) 8% ___ Term of mortgage(s) 5 years ___

    balloon payment due February 1, 2013

5. Is the property for sale? __ No ___

    If so, for how long? -------- ___

    asking price? _____ ------- ___

    for what use(s) _____ ------ ___

    Have any offers been received? --------- ___

    If so, for what amount(s)? ___ ------- ___

    Summarize any attempts to sell the property ___ none ___

    _____

    _____

6. Present value of property Monroe County assessment is $58,100.00 and the
    Source of valuation City of Rochester assessment is $70,000.00

    city and county tax records

01/2011

## GROSS ANNUAL INCOME

| USE (# of Apts., Retail Store, Office, etc.) | UNIT SIZE (sq. ft.; # of bedrooms) | MONTHLY RENT AMOUNT | ANNUAL RENT AMOUNT |
|---|---|---|---|
| apartment | 1 bedroom 1,000 sq.ft. | $400.00 | $4,800.00 |
| apartment | 1 bedroom 1,000 sq.ft. | $400.00 | $4,800.00 |
| apartment | 1 bedroom 1,000 sq.ft. | $400.00 | $4,800.00 |
| bar/restaurant | 3,600 sq.ft. | ~~$0.00~~ approx 2,500/month | $0.00 |

*(handwritten: Pric this is a little low)*

The owner operates the restaurant/bar and had a net loss of $10,348.00 for the 2011 tax year

| | |
|---|---|
| **TOTAL ANNUAL INCOME:** | 14,400.00 |
| **LESS (8%) VACANCY FACTOR:** (Explain, if greater than 8%) | 1,152.00 |
| **TOTAL ADJUSTED GROSS INCOME:** | $13,248.00 |

## ANNUAL EXPENSES

1. **Annual Fixed Charges**

| | |
|---|---|
| Real Estate Taxes (City & County) ... County $889.10 City $4,081.00 | $4,970.10 |
| Insurance ... | 1,202.00 |
| Average Annual Interest (over next 5 years) ... | 3,200.00 |

2. **Operating Expenses** *(handwritten: The utilities are included in the rent.)*

| | |
|---|---|
| Electric ... | 7,500.00 |
| Fuel ... | 7,300.00 |
| Water ... | 700.00 |
| Pure Waters ... | 850.00 |
| Advertising ... *(handwritten: mostly for the bar)* | 6,000.00 |
| Miscellaneous (attach explanation) sports bar package | 2,200.00 |

3. **Maintenance Expenses (attach list)** *(handwritten: how do repairs differ from general main?)*

| | |
|---|---|
| Repairs ... | 5,500.00 |
| General Building Maintenance ... | 7,500.00 |
| Yard and Ground Care ... | 0.00 |
| Miscellaneous ... | 1,000.00 |
| **TOTAL ANNUAL EXPENSES:** | $ 35,382.00 |
| **PROFIT or (LOSS)** LOSS!!! | $ 22,134.00 |

**D. TOTAL INVESTMENT**

| | |
|---|---|
| 1. Down payment ... | $20,000.00 |
| 2. Capital Improvements (attach list) ... | $20,000.00 |
| 3. Principal paid to date (original mortgage less current principal balance) ... | $32,100.16 |
| **TOTAL INVESTMENT:** | $72,100.00 |

**E. RATE OF RETURN/YR. [Profit or Loss divided by Total Investment]** = 0.30

SIGNATURE OF PREPARER *Anthony P. LaFay* DATE Sept. 14, 2012

Anthony P. LaFay

01/2011

In support –

Christopher Downey –
He's a DJ – no one comes out till midnight – She's losing business right now.

Terry Smith Brown – she's in favor, but wants more info on security

Glen Dougal – friend + patron

Alex White – "NYS Liquor License takes precedent to Local Law" – absolutely essential to rule in favor –

Richard Ortiz – husband – being closed at 12 am is a hardship bec people go out later – we serve food all day. – by being open later we can here more people. – right next store is a grocery store that ~~sells~~ sells bur + a liquor store. They are (Joan + Richard) licensed security guards – but we don't have any security now unless we have a party

In opposition – Nana Maasai Sonekai – let's look at the pros + cons + come up [w]th better solution – staying til 7am is [...] noise + loitering

*[left margin, rotated:]*
Rebuttal – everytime this occurs inside the Bus, we can educate our clientele!

RH – would you consider only weekends?
Joan – That would be very hard for me – I'm losing money.

*[bottom left margin:]*
Just on weekends



City assessment photo

*Revised at 10/18/12 meeting*

**B.** **GROSS ANNUAL INCOME** (...ormation provided must be for perr...ed uses, not the proposed use)

| USE (# of Apts., Retail Store, Office, etc.) | UNIT SIZE (sq. ft.; # of bedrooms) | MONTHLY RENT AMOUNT | ANNUAL RENT AMOUNT |
|---|---|---|---|
| 1. APT #1 | 1,000 sq.ft. | 400 00 | 4,800 00 |
| 2. " #2 | " | 400 00 | 4,800 00 |
| 3. " #3 | " | 400 00 | 4,800 00 |
| 4. BAR/KR? | 7,600 | 1,000 | 12,000 00 |
| 5. | | | |
| 6. | | | |

**TOTAL ANNUAL INCOME:** 26,6 26,400

**LESS (8%) VACANCY FACTOR:** 16,600
(Explain, if greater than 8%)

**TOTAL ADJUSTED GROSS INCOME:** 19,800

**C.** **ANNUAL EXPENSES**

  1. **Annual Fixed Charges**
     - Real Estate Taxes (City & County) ............ 4,970.10
     - Insurance ............ 1,202.00
     - Average Annual Interest (over next 5 years) ............ 3,200.00

  2. **Operating Expenses**
     - Electric ............ 7,500.00
     - Fuel ............ 7,300.00
     - Water ............ 700.00
     - Pure Waters ............ 850.00
     - Advertising ............ 1,000.00
     - Miscellaneous (attach explanation) ............ 0.00

  3. **Maintenance Expenses** (attach list)
     - Repairs ............ INCL.
     - General Building Maintenance ............ 1,200.00
     - Yard and Ground Care ............ 0.00
     - Miscellaneous ............ 1,000.00

     **TOTAL ANNUAL EXPENSES:** 21,710
     **PROFIT or (LOSS)** (1,925)

**D.** **TOTAL INVESTMENT**
  1. Down payment ............ 20,000.00
  2. Capital Improvements (attach list) ............ 25,500.00
  3. Principal paid to date (original mortgage less current principal balance) ............ 32,100.16

     **TOTAL INVESTMENT:** 77,600.16

**E.** **RATE OF RETURN/YR.** [Profit or Loss divided by Total Investment] (15%)

**SIGNATURE OF PREPARER** _[signature]_ **DATE** _____



**City of Rochester, NY**

# USE VARIANCE
# STATEMENT OF INCOME AND EXPENSE

<u>**PLEASE NOTE**</u>: **AT HEARING TIME, APPLICANTS MAY BE ASKED TO PROVIDE AT LEAST TWO (2) CALENDAR YEARS OF FINANCIAL INFORMATION, OR FROM THE DATE OF PURCHASE, WHICHEVER IS LESS.**

**PROPERTY ADDRESS:** _____

**A.    <u>PROPERTY DATA</u>**

1.    **Date property was purchased by current owner** _____

2.    **Was a Certificate of Occupancy issued?** _____

      **Date of issuance?** _____

      **If so, for what use(s)?** _____

      **If not, why?** _____

3.    **Cost of Purchase** _____

4.    **Original Amount of Mortgage(s)** _____

      **Mortgage Holder(s)** _____

      **Address** _____

      **Interest Rate(s)** _____ **Term of mortgage(s)** _____

5.    **Is the property for sale?** _____

      **If so, for how long?** _____

        **asking price?** _____

        **for what use(s)** _____

      **Have any offers been received?** _____

      **If so, for what amount(s)?** _____

      **Summarize any attempts to sell the property** _____

      _____

      _____

6.    **Present value of property** _____

      **Source of valuation** _____

A.  Attached single-family dwellings.

B.  Dwelling units when part of a mixed-use development with other permitted commercial uses.

C.  Live-work space, subject to the additional requirements for specified uses in § 120-142.1. **[Amended 6-17-2003 by Ord. No. 2003-183]**

D.  Bed-and-breakfast establishments, subject to the additional requirements for specified uses in § 120-132.

E.  Family and group family day-care homes.

F.  Adult family day-care homes.

G.  Day-care centers, subject to the additional requirements for specified uses in § 120-135.

H.  Places of worship.

I.  Convents and rectories.

J.  Public and semipublic uses, except as otherwise listed in § 120-35. **[Amended 7-19-2011 by Ord. No. 2011-247[10] ]**

K.  Retail sales and service operating between the hours of 6:00 a.m. and 11:00 p.m., except the sale, storage or display of firearms, ammunition or explosives.

L.  Offices between the hours of 6:00 a.m. and 11:00 p.m.

M.  Mixed uses, as listed in this section, not including industrial uses. **[Added 9-21-2010 by Ord. No. 2010-323]**

## § 120-35. Special permit uses.

The following uses are allowed as special permit uses in the C-1 District:

A.  Community garages and parking lots.

B.  Parks and recreational areas.

C.  Homeless residential facilities, subject to the additional requirements for specified uses in § 120-140.

D.  Hospice.

E.  Residential care facilities, subject to the additional requirements for specified uses in § 120-146.

F.  Public utilities, subject to the additional requirements for specified uses in § 120-144.

---

10.  **Editor's Note: This ordinance provided an effective date of 9-1-2011.**

G. Ancillary parking lots, subject to the additional requirements for specified uses in § 120-131. **[Amended 6-17-2003 by Ord. No. 2003-183]**

H. Bar, cocktail lounge and tavern, operating between the hours of 6:00 a.m. and 11:00 p.m., including accessory outdoor seating/assembly areas.

I. Restaurants operating between the hours of 6:00 a.m. and 11:00 p.m., including accessory outdoor seating/assembly areas but excluding drive-through facilities.

J. Offices operating beyond the hours of 6:00 a.m. to 11:00 p.m.

K. Retail sales and services operating beyond the hours of 6:00 a.m. to 11:00 p.m.

## § 120-36. Lot, area and yard requirements.

The following lot, area and yard requirements shall apply to the C-1 District:

A. Lot frontage requirements.

    (1) Residential uses.

        (a) Minimum lot frontage: N/A.

    (2) Nonresidential uses.

        (a) Minimum lot frontage: N/A.

B. Lot area requirements.

    (1) Residential uses.

        (a) Minimum lot area: N/A.[11]

    (2) Nonresidential uses.

        (a) Minimum lot area: N/A.[12]

C. Yard requirements.

    (1) Residential uses.

        (a) Maximum front yard setback: zero to five feet or average front yard depth of building(s) along the corridor and within the commercial district where the property is located, but in no case more than five feet larger or smaller than the average of the front yard depth on buildings on the two adjoining lots. In cases where a specific design guideline or concept plan has been adopted, the recommended setbacks shall be followed.

---

11. Editor's Note: Former Subsection B(1)(b) and (c), providing maximum building coverage and maximum lot coverage, respectively, which immediately followed this subsection, was repealed 9-21-2010 by Ord. No. 2010-323.

12. Editor's Note: Former Subsection B(2)(b) and (c), providing maximum building coverage and maximum lot coverage, respectively, which immediately followed this subsection, was repealed 9-21-2010 by Ord. No. 2010-323.



**EXHIBIT N**



**City of Rochester**

City Clerks Office

# Certified Ordinance

Rochester, N.Y., _____

## TO WHOM IT MAY CONCERN:

I hereby certify that the following is a true copy of an ordinance which was duly passed by the Council of the City of Rochester on **September 19, 2012** and **Approved** by the Mayor of the City of Rochester, and was deemed duly adopted on **September 20, 2012** in accordance with the applicable provisions of law.

Ordinance No. 2012-363

Amending Chapter 120 Of The Municipal Code,
The Zoning Code, Relating To Retail Sales And
Service, As Amended

BE IT ORDAINED, by the Council of the City of Rochester as follows:

Section 1.  Chapter 120 of the Municipal Code, Zoning Code, as amended, is hereby further amended as follows:

a.     Add or amend the following definitions in §120-208 to read as follows:

BAR - An establishment used primarily for the dispensing or sale of alcoholic beverages by the drink for on-site consumption.

PAWNBROKER - Any business or location in which a collateral loan broker, as defined in Article 5 of the New York State General Business Law, is operating.

RETAIL SALES AND SERVICE - The sale, provision of service or on-premises incidental production or assembly of general merchandise to the general public for direct use or consumption.  This shall include carry-out restaurants and the like with six or fewer seats

**RETAIL SALES AND SERVICE, FULL-LINE FOOD STORE** - Retail sales and service offering for sale a full selection of food products including at least a variety of fresh produce and not offering for sale products from more than one of the following categories:

1. Tobacco
2. Beer/Wine coolers
3. Lottery

**RETAIL SALES AND SERVICE, HIGH-IMPACT** - Retail sales and service offering for sale any product or service which requires an owner, operator or employee to obtain a City of Rochester secondhand dealer's license (excluding vehicle-related dealers); any County or State license or registration for tobacco, beer, wine coolers, or lottery (excluding FULL-LINE FOOD STORE); and/or a Federal Firearms Dealer's license; or, offering for sale tobacco, tobacco paraphernalia, or smoking paraphernalia, except not a FULL-LINE FOOD STORE.

**RETAIL SALES AND SERVICE, LOW-IMPACT** - Retail sales and service not meeting the definitions of High-Impact Retail Sales and Service, Specialty Retail, or a Full-line Food Store.

**RETAIL SALES AND SERVICE, SPECIALTY** - Low-impact retail sales and service, occupying less than 1,000 square feet, offering for sale only specialized types of foods, products, or services, including, but not limited to: baked goods, candy, health-food, antiques, fashion accessories, sporting goods, art objects, art and craft supplies, books, clothing, decorative accessories, flowers and plants, handicrafts, jewelry, toys, specialty foods, meats, seafood, shoe repair, and frame shops, and excluding tattoo parlors. No tobacco, beer/wine coolers, or lottery may be included in the inventory of Specialty Retail Sales and Service.

b.  Amend §120-8, relating to permitted uses in the R-1 District, by adding the following new subsections:

H.  Retail Sales and Service, Specialty, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

I.  Office, when in an existing structure built for a nonresidential use, [operating between the hours of 6 a.m. and 9 p.m.] subject to the additional requirements for specified uses in §120-146.1.

c. Amend §120-9, relating to special permit uses in the R-1 District, by adding the following new subsections:

G. Retail Sales and Service, Full-line Food Store, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

H. Retail Sales and Service, Low-Impact, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in § 120-146.1.

d. Amend §120-17, relating to permitted uses in the R-2 District, by adding the following new subsections:

I. Retail Sales and Service, Specialty, when in an existing structure built for a nonresidential use, operating between the hours of 6 a.m. and 9 p.m.

J. Office, when in an existing structure built for a nonresidential use, operating between the hours of 6 a.m. and 9 p.m.

e. Amend §120-18, relating to special permit uses in the R-2 District, by adding the following new subsections:

M. Retail Sales and Service, Full-line Food Store, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

N. Retail Sales and Service, Low-Impact, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

f. Amend §120-26, relating to permitted uses in the R-3 District, by adding the following new subsections:

M. Retail Sales and Service, Specialty, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

N. Office, when in an existing structure built for a nonresidential use, operating between the hours of 6 a.m. and 9 p.m.

g. Amend §120-27, relating to special permit uses in the R-3 District, by adding the following new subsections:

L.   Retail Sales and Service, Full-line Food Store, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

M.   Retail Sales and Service, Low-Impact, when in an existing structure built for a nonresidential use, subject to the additional requirements for specified uses in §120-146.1.

h.   Amend §120-34, relating to permitted uses and structures in the C-1 District, by amending or adding the following new subsections:

K.   Retail sales and service, Full-line Food Store, when in an existing building, subject to the additional requirements for specified uses in §120-146.1.

L.   Retail sales and service, Low-Impact, subject to the additional requirements for specified uses in §120-146.1.

M.   Retail sales and service, Specialty, subject to the additional requirements for specified uses in §120-146.1.

N.   Offices between the hours of 6:00 a.m. and 11:00 p.m.

O.   Bars and restaurants, operating between the hours of 6:00 a.m. and 11:00 p.m., including accessory outdoor seating/assembly areas but excluding drive-through facilities.

P.   Mixed uses, as listed in this section, not including industrial uses.

i.   Amend §120-35, relating to special permit uses in the C-1 District by repealing subsections H and I, and by relettering subsections J and K as subsections H and I.

j.   Amend subsection B of §120-37, relating to bulk requirements in the C-1 District to read as follows:

B.   Square footage.

(1)   Residential uses.

(a)   Maximum square footage, any or each use:  NA.

   (b) Maximum square footage, detached accessory use or structure:  NA.

  (2) Nonresidential uses.

   (a) Maximum square footage, principal use or structure: 3,000 square feet.

   (b) Maximum square footage, detached accessory use or structure: 1,000 square feet.

  (3) Mixed-Uses

   (a) Maximum square footage, each nonresidential use: 3,000 square feet

   (b) Maximum square footage, detached accessory use or structure: 1,000 square feet.

**k.** Amend §120-42, relating to permitted uses or structures in the C-2 District, by amending the following subsections:

**M.** Retail sales and service, Full-line Food Store, when in an existing building, subject to the additional requirements for specified uses in § 120-146.1.

**N.** Retail sales and service, Low-Impact, subject to the additional requirements for specified uses in §120-146.1.

**O.** Retail sales and service, Specialty, subject to the additional requirements for specified uses in §120-146.1.

**P.** Limited adult retail store when conducted entirely within an enclosed building.

**Q.** Health clubs and similar facilities.

**R.** Theaters.

**S.** Office.

**T.** Bars, restaurants and banquet facilities, including accessory outdoor seating/assembly areas provided the outdoor areas only

operate between the hours of 6:00 a.m. and 11:00 p.m., excluding drive-through facilities.

l.    Amend §120-43, relating to special permit uses in the C-2 District, by adding the following new subsection:

T.    Retail sales and service, High-Impact, subject to the additional requirements for specified uses in §120-146.1.

m.    Add a new subsection B(3) to §120-45, relating to bulk requirements in the C-2 District:

(3)    Mixed-Uses

(a)    Maximum square footage, each nonresidential use: 6,000 square feet

(b)    Maximum square footage, detached accessory use or structure: NA.

n.    Amend §120-50, relating to permitted uses or structures in the C-3 District, by amending or adding the following new subsections:

K.    Retail sales and service, Full-line Food Store, subject to the additional requirements for specified uses in §120-146.1.

L.    Retail sales and service, High-Impact, subject to the additional requirements for specified uses in §120-146.1.

M.    Retail sales and service, Low-Impact, subject to the additional requirements for specified uses in §120-146.1.

N.    Retail sales and service, Specialty, subject to the additional requirements for specified uses in §120-146.1.

O.    Health clubs and similar facilities.

P.    Theaters.

Q.    Amusement center.

R.    Outdoor entertainment.

S.    Office.

T. Motels and hotels.

U. Bars, restaurants and banquet facilities, including outdoor seating/assembly and drive-throughs, subject to the additional requirements for specified uses in §120-136.

V. Drive-throughs, subject to the additional requirements for specified uses in §120-136.

W. Warehouse and wholesale distribution facilities under 15,000 square feet.

X. Light industrial services when conducted entirely within a completely enclosed building.

Y. Research laboratories including testing facilities.

Z. Automotive-related uses, including car washes, vehicle service stations, vehicle sales, vehicle rental services, vehicle repair stations including commercial vehicle repair, and vehicle sales accessory to vehicle repair stations, subject to the additional requirements for specified uses in Article XVIII.

AA. Parking lots as a principal use, including ancillary community garages and parking lots, subject to the additional requirements for specified uses in §120-131.

BB. Sexually oriented businesses, subject to the additional requirements for specified uses in §120-148, including only limited adult retail store, adult retail store and escort agency.

CC. Pawnbrokers.

o. Amend §120-63, relating to limited uses in the CCD District, by adding the following new subsection:

F. Retail Sales and Service, High Impact.

p. Amend §120-64, relating to prohibited uses in the CCD District, by adding the following new subsection:

E. Pawnbrokers.

q.  Amend subsection A of §120-76, relating to permitted uses in the PMV District, by amending or adding the following new subsections:

   (10)  Retail sales and service, Low-Impact, subject to the additional requirements for specified uses in §120-146.1.

   (11)  Retail sales and service, Specialty, subject to the additional requirements for specified uses in §120-146.1.

   (12)  Retail sales and service, Full-line Food Store, subject to the additional requirements for specified uses in §120-146.1.

   (13)  Bars, restaurants and the like including outdoor seating/assembly areas provided the outdoor areas only operate between the hours of 6:00 a.m. and 11:00 p.m., but excluding drive-through facilities.

   (14)  Manufacturing uses when the products are sold as retail for an individual consumer.

   (15)  Parks and recreation uses.

r.  Amend subsections (c) through (g) of subsection A(7) of §120-77, relating to permitted uses in the H-V District to read as follows:

   (c)  Bars and restaurants, not exceeding 2,500 square feet and excluding drive-through facilities.

   (d)  Private clubs not exceeding 2,500 square feet.

   (e)  Office space not exceeding 2,500 square feet.

   (f)  Retail sales and services, Specialty.

   (g)  Retail sales and services, Low-Impact, not exceeding 2,500 square feet.

s.  Amend subsection B(1) and add B(13) of §120-77, relating to special permit uses in the H-V District to read as follows:

   (1)  The following uses when located within 30 feet of the edge of the Genesee River:

       (a)  Museums and aquariums.

(b)    Private clubs.

(c)    Bars and restaurants, excluding drive-through facilities.

(d)    Tourist information centers.

(e)    Other establishments relating to and supporting water-dependent activities.

(13)    Retail sales and service, Full-line Food Store, subject to the additional requirements for specified uses in §120-146.1.

t.    Add a new subsection (n) to subsection A(1) of §120-81, relating to permitted uses and structures in the M-1 District:

(n)    Retail sales and service, Full-line Food Store, when in an existing building, subject to the additional requirements for specified uses in § 120-146.1.

u.    Amend the following subsections of subsection B of §120-81, relating to permitted uses and structures in the M-1 District to read as follows:

(3)    Retail sales and service, Low-Impact, subject to the additional requirements for specified uses in §120-146.1.

(4)    Retail sales and service, Specialty, subject to the additional requirements for specified uses in §120-146.1.

(5)    Offices and clinics.

(6)    Bars, restaurants and banquet facilities.

v.    Amend the following subsections of subsection A of §120-83, relating to special permit uses in the M-1 District to read as follows:

(1)    Retail sales and service, High-Impact, <u>Low-Impact and Specialty,</u> subject to the additional requirements for specified uses in §120-146.1.

(2)    Offices or clinics.

(3)    Bars and restaurants.

(4)     Motels and hotels.

(5)     Amusement centers.

(6)     Public and semipublic uses.

(7)     Health clubs.

(8)     Mixed uses.

(9)     Entertainment, subject to the additional requirements for specified uses in §120-137.

(10)    Places of worship.

(11)    Pawnbrokers.

w.    Add the following new subsection to subsection D(3)(a) of §120-120, relating to prohibited uses in the Mt. Read - Emerson Urban Renewal District:

[8]     Pawnbrokers.

x.    Add the following new subsection to subsection F(1)(a) of §120-120, relating to prohibited uses in the Ridgeway Urban Renewal District:

[10]    Pawnbrokers.

y.    Add the following new subsection to subsection I(1)(b) of §120-120, relating to prohibited uses in the Third Ward Urban Renewal District:

[11]    Pawnbrokers.

z.    Amend subsection L(1)(b)[1][c] of §120-120, relating to permitted uses in the Neighborhood Commercial Land Use Area of the Brooks Landing Urban Renewal District to read as follows:

[c]     Retail sales and services, Full-Line Food Stores, Low-Impact and Specialty, subject to the additional requirements for specified uses in §120-146.1.

aa.   Amend subsection L(1)(c)[1][c] of §120-120, relating to permitted uses in the Riverfront Commercial Land Use Area of the Brooks Landing Urban Renewal District to read as follows:

[c] Retail sales and service, Full-Line Food Stores, Low-Impact and Specialty, subject to the additional requirements for specified uses in §120-146.1, when conducted in an entirely closed building.

bb. Amend subsection M(1)(d) of §120-120, relating to permitted uses in the Erie Canal Urban Renewal District to read as follows:

(d) Retail sales and service, Full-Line Food Stores, Low-Impact and Specialty, subject to the additional requirements for specified uses in §120-146.1.

cc. Amend subsection N(1)(b) of §120-120, relating to permitted uses in the La Marketa North Clinton Avenue Urban Renewal District to read as follows:

(b) Retail sales and service, Full-Line Food Stores, Low-Impact and Specialty, subject to the additional requirements for specified uses in §120-146.1.

dd. Add a new subsection N(2)(c) of §120-120, relating to special permit uses in the La Marketa North Clinton Avenue Urban Renewal District:

(c) Retail sales and service, High-Impact, subject to the additional requirements for specified uses in §120-146.1.

ee. Amend subsection B(1) of PDD #9, Canalside Business Center, relating to permitted uses and structures, by amending or adding subsections (t) through (y) to read as follows:

(t) Retail sales and service, Full-line Foodstore, High-Impact, Low-Impact and Specialty, subject to the additional requirements for specified uses in §120-146.1.

[(u) Retail sales and service, High-Impact, subject to the additional requirements for specified uses in §120-146.1.

(v) Retail sales and service, Low-Impact, subject to the additional requirements for specified uses in §120-146.1.

(w) Retail sales and service, Specialty, subject to the additional requirements for specified uses in §120-146.1.]

[(x)] (u)     Technical and vocational schools.

[(y)] (v)     Warehouse and distribution facilities.

ff.     Add the following new subsection to subsection D, relating to prohibited uses in PDD#12, Eastman Business Park:

(12)    Pawnbrokers.

gg.     Add the following new section:

§120-146.1. Retail sales and service.

The purpose of this section is to regulate retail sales and service to promote the health, safety, and general welfare of the citizens and protect the quality of the neighborhoods of the City. High-impact retail sales and service, due to the nature, volume or intensity of the sales and services provided, has a history of or a likelihood of creating negative impacts to adjacent properties or the surrounding neighborhood by virtue operational impacts such as noise, traffic, parking, loitering, and increased need for police services. Other retail operations, low-impact, specialty, and full-line food stores, have so few negative impacts that they may be located in close proximity to residential uses as they will offer products and services to residents.

A.     Distance separation requirements.

(1)    Measurement. The following separation requirements shall be measured from any lot line on the same or an adjoining frontage of a High-Impact Retail Sales and Service business to the lot line of another High-Impact Retail Sales and Service business or a protected use listed below. Where a multi-tenant facility such as a shopping center is involved, measurement shall occur from the boundary of the leasehold interest instead of the property line.

(2)    Protected uses. For the purpose of measuring separation from High-Impact Retail Sales and Service, "protected uses" shall include the following:

(a)    Public and semipublic uses, except police and fire stations;

        (b)     Private Schools

(3)     Distance requirements.

        (a)     High-Impact Retail Sales and Service.

             [1]     Distance from any protected use:  500 ft

             [2]     Distance from any other High-Impact Retails Sales and Service:  500 ft.

B.     Design standards.

In addition to the standards listed in Article XIX of this Chapter, the following apply:

(1)     In new construction, as well as reoccupancy of an existing building, areas of transparency shall be provided along the primary street frontage and shall be equal to 70% of the wall area between the height of two and eight feet from the ground.

(2)     In all Retail Sales and Service uses, blocking the windows with interior shelving, or the like, thereby reducing the transparency, is strictly prohibited.

C.     Hours of operation.

| Use | C-1 | C-2 | C-3 | CCD | M-1 | R | V-C |
|---|---|---|---|---|---|---|---|
| High-Impact | NA | TBD by CPC | 24 hours | 6am to 2 am | 24 hours | NA | NA |
| Low-Impact | 6am to 11pm | 6am to 2 am | 24 hours | 24 hours | 24 hours | 6am to 9pm | Refer to District Regs. |

| Specialty | 6am to 11pm | 6am to 2 am | 24 hours [6am to 11pm] | 24 hours | 24 hours [6am to 11pm] | 6am to 9pm | Refer to District Regs. [6am to 11pm] |
|---|---|---|---|---|---|---|---|
| Full-line Food Store | 6am to 11pm | 6am to 2 am | 24 hours | 24 hours | 24- hours | 6am to 9 pm | Refer to District Regs. |

hh.    Amend §120-191, Procedures approved by the Director of Zoning, by repealing subsection B(4)(b)[2].

ii.    Amend subsection B(5)(a) of §120-195, Procedures approved by the Zoning Board of Appeals to read as follows:

(a)    Permit any use or development in a residential district which is not permitted as of right by the use regulations applicable in such district or in any other residential district established by this chapter.

jj.    Amend the first sentence of subsection G(1) of §120-199, Nonconforming use, to read as follows:

When the active operation of all or a portion of a nonconforming use is discontinued or abandoned for a period of nine consecutive months, except for nonconforming High-Impact Retail Sales and Service, for which the period shall be three consecutive months, regardless of any intent to resume or not to abandon the use, the use or portion thereof shall not be reestablished or resumed.

kk.    Amend the first sentence of subsection G(3) of §120-199, Nonconforming use, to read as follows:

Prior to the expiration of a period of abandonment or discontinuance, the owner of any nonconformity may apply to the Director of Planning and Zoning for a certificate of nonconformity to document the intent to discontinue a nonconforming use for a period in excess of the period of abandonment or discontinuance.

11. Amend the first sentence of subsection G(4) of §120-199, Nonconforming use, to read as follows:

> Upon the expiration of a period of abandonment or discontinuance, the owner of any nonconformity may apply for a certificate of nonconformity, which, upon denial by the Director of Planning and Zoning, may be appealed to the Zoning Board of Appeals.

Section 2. This ordinance shall take effect on November 1, 2012.

Bracketed material deleted; underlined material added.

Passed by the following vote:

Ayes -    President Warren, Councilmembers Conklin, Haag, McFadden, Miller, Ortiz, Palumbo, Scott, Spaull - 9.

Nays -    None - 0.

Attest _____    **City Clerk**