THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

OBSESSION SPORTS BAR & GRILL, INC.
and JOAN ORTIZ,

         *Plaintiffs,*

 vs.

THE CITY OF ROCHESTER, a municipal
corporation,

         *Defendant.*

CASE NO.: 6:15-CV-06152-CJS/JWF

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

*"Patriotism is supporting your country all the time, and your government when it deserves it."*

    -*Mark Twain*

         Respectfully submitted,

         Michael A. Burger
         SANTIAGO BURGER LLP
         1250 Pittsford Victor Road
         Building 100, Suite 190
         Pittsford, NY  14534
         Tel.: (585) 563-2400
         mike@litgrp.com

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

Preliminary Statement ............................................................................................. 1

Discussion ................................................................................................................ 2

    Point One: ........................................................................................................ 2

        The City Deprived Plaintiffs of a Constitutional Property
            Interest. ............................................................................................. 2

    Point Two: ........................................................................................................ 4

        The City Improperly Infringed upon Plaintiffs' Property
            Interest. ............................................................................................. 4

    Point Three: ..................................................................................................... 6

        The City Acted Without Authority and, *a fortiori*,
            Arbitrarily. ........................................................................................ 6

    Point Four: ..................................................................................................... 11

        Plaintiffs' Lawsuit is Not Precluded. ...................................................... 11

Conclusion ............................................................................................................. 14

New York State Cases

*Beer Garden v. New York State Liq. Auth.*, 79 N.Y. 2d 266 (1992) ............................ 3

*Brodsky v. Murphy*, 25 N.Y.2d 518 (1969) ................................................................ 6

*Cerberus Props., Inc. v. Kirkmire*, 121 A.D.3d 1556 (4th Dep't 2014) .................... 9, 16

*D'Alessandro v. Kirkmire*, 125 A.D.3d 1309 (4th Dep't 2015) .................................. 16

*Jiovon Anonymous v. City of Rochester*, 13 N.Y.3d 35 (2009) ................................. 15

*Manocherian v. Lenox Hill Hosp.*, 229 A.D.2d 197 (2nd Dep't 1997) .......................... 6

*Obsessions Bar and Grill v. City of Rochester*, 118 A.D.3d 1366 (2014) .................. 10

*Parker v. Blauvelt Vol. Fire Dep't, Inc.*, 93 N.Y.2d 343 (1999) ................................. 15

*People v. Davis*, 25 Misc.3d 634 (2009) ................................................................... 16

*People v. De Jesus,* 54 N.Y.2d 465 (1981) ............................................................. 9, 10

*People v. Iverson*, 22 Misc.3d 470 (2008) ................................................................ 16

*Sumpter v. White Plains Hous. Auth.*, 29 N.Y.2d 420 (1972) ................................... 12

*Town of Islip v. Paliotti*, 196 A.D.2d 648 (2nd Dep't 1993) ........................................ 7

*Turner v. Municipal Code Violations Bureau of the City of Rochester*,
 122 A.D.3d 1376 (4th Dep't 2014) ...................................................................... 16

*Watergate II Apts. v. Buffalo Sewer Auth.*, 46 N.Y.2d 52 (1978) ............................... 1

Federal Cases

*Barry v. Barchi*, 443 U. S. 55 (1979) ........................................................................ 4

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988) ......................................... 9

*Charry v. Hall*, 709 F.2d 139 (2d Cir 1983) .............................................................. 3

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007) ........................ 8, 10

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ..................................................... 17

*Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir. 1982) ................... 8

*Daniels v. Williams*, 474 U.S. 327 (1986) ............................................................... 11

*Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986) ................................................. 15

*Deperno v. Town of Verona***,** 2011 WL 4499293 (N.D.N.Y. 2011) ..................... 11, 12

*Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877 (2d Cir. 1996) ................................................................. 12, 13

*Hornsby v. Allen*, 326 F.2d 605 (5th Cir.1964) ............................................... 3

*Hudson v. Palmer*, 468 U.S. 517 (1984) ......................................................... 11

*Linkletter v. Walker*, 381 U.S. 618 (1965) ....................................................... 6

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ............................... 3, 13

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) ........ 7, 15

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972) ......................................... 4

*Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir. 1999) ............................ 8

*Norton v. Shelby County*, 118 U.S. 425 (1886) ............................................... 6

*Norton v. Town of Islip*, 239 F. Supp. 2d 264 (EDNY 2003) ........................ 15

*Parratt v. Taylor*, 451 U.S. 527 (1981) ...................................................... 11, 13

*Patsy v. Board of Regents of Fla.*, 457 U.S. 496 (1982) .................................. 1

*Pembaur v. Cincinnati*, 475 US 469 (1986) .................................................. 13

*Rivera-Powell v. New York City Bd. of Elections*, 470 F3d 458 (2d Cir 2006) ................................................................................................ 11

*Sloup v. Loeffler*, 745 F. Supp. 2d 115 (EDNY 2010) ..................................... 9

*Sloup v. Loefller*, 2008 WL 3978208 at *13 (EDNY 2008) ............................. 9

*Soundview Associates v. Town of Riverhead,* 893 F.Supp.2d 416 (E.D.N.Y. 2012) ............................................................................... 4

*Sullivan v. Town of Salem*, 805 F.2d 81 (2d cir. 1986) .................................. 8

*Traux v. Raich*, 239 U.S. 33 (1915) ................................................................... 5

*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375 (2d Cir. 1995) ............... 4

*Vives v. Town of Darien,* 524 F.3d 346 (2d Cir. 2008) ................................... 6

*Wahba v New York Univ.*, 492 F2d 96 (2d Cir 1974) ................................ 3, 14

*Watrous v. Town of Preston*, 902 F. Supp. 2d 243 (D. Conn. 2012) .............. 8

*Zinermon v. Burch*, 494 U.S. 113 (1990) ................................................. 11, 13

Federal Statutes

42 U.S.C. § 1983 ................................................................................................ 7

PRELIMINARY STATEMENT

Plaintiffs Obsession Sports Bar & Grill, Inc. ("Obsession") and Joan Ortiz ("Mrs. Ortiz") (collectively, "Plaintiffs") submit this Reply Memorandum of Law in support of their pending Motion for Partial Summary Judgment and in opposition to Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted.

Defendant City of Rochester ("City") attempts to recast its illegal shutdown of Plaintiffs' lawful business during the state-sanctioned, prime revenue-generating hours of 11:00 p.m. to 2:00 a.m. as a run of the mill variance dispute. This is at least unfair.

First, Plaintiffs' case is not predicated upon the ZBA's refusal to grant a zoning variance from its *illegal* ordinance, as the City claims, but rather upon the illegal ordinance itself. Any other reading of the Amended Complaint is contrived. In their state court challenge to the ordinance, the Plaintiffs did not obtain reversal of a variance denial. Plaintiffs obtained a judgment declaring that the City of Rochester's Municipal Code section 120-34(O) ("ordinance") "is an impermissible exercise of municipal zoning power" and "is null and void".

Plaintiffs need not have sought a variance at all before marching into court to attack the ordinance. *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 516 (1982); *Watergate II Apts. v. Buffalo Sewer Auth.*, 46 N.Y.2d 52, 57 (1978). The fact that the Plaintiffs first availed themselves of an administrative proceeding before filing suit does not diminish their right to relief under 42 U.S.C. § 1983. The opportunity

1

to seek invalidation of an illegal law is not due process to address the deprivation that the ordinance already caused.

Contrary to what the City would have this Court believe, 1) the plaintiffs do possess a constitutionally protected property interest in their liquor license, 2) the City did impermissibly infringe upon that interest, 3) the City acted without authority, and thus arbitrarily in doing so, and 4) Plaintiffs are not precluded from bringing the instant action for damages under 42 U.S.C. § 1983.

DISCUSSION

Point One:

**The City Deprived Plaintiffs of a Constitutional Property Interest.**

The City attempts to re-characterize the Plaintiffs' property interest as an interest in obtaining a variance from the City's Zoning Board of Appeals ("ZBA"). *See* City's Brief at pp. 5, 8-10. The City then suggests that because its ZBA's grant or denial of a variance application is discretionary, it cannot be said that Plaintiffs had a property interest in the variance. *See id.* at p. 8-10. In doing so, the City analogizes this matter to cases involving building permits, whose issuance is uncertain because local officials have discretion to deny them. *See id.* at p. 10, 15.

The City's argument is flawed. As was set forth in Plaintiffs' moving papers, Plaintiffs do not claim a property interest in a variance (which a Zoning Board of Appeals has discretion to deny), but in the Plaintiffs' liquor license, which the New York State Liquor Authority had already granted. That license created Plaintiffs'

property interest in operating their lawful business until 2:30 a.m. in accordance with New York law, and the City may not alter or revoke it by local legislative fiat. *See Charry v. Hall*, 709 F.2d 139, 144 (2d Cir 1983), *citing Hornsby v. Allen*, 326 F.2d 605 (5th Cir.1964) (applicants for liquor license are entitled to due process).

"The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982). The New York State Liquor Authority (and *only* the New York State Liquor Authority) may suspend or revoke a liquor license only for cause. *See, e.g., Beer Garden v. New York State Liq. Auth.*, 79 N.Y. 2d 266 (1992). The holder of a liquor license has "received from the state permission to operate a lucrative business and obtained a valuable property right in the liquor license itself". *Wahba v. New York University and Severo Ochoa*, 492 F.2d 96 (2d Cir. 1974), citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972).

The City must accept that Obsessions has a property right in its state-issued license. It would be absurd to argue that a horse trainer's license is a protected property interest under the Fourteenth Amendment, *Barry v. Barchi*, 443 U. S. 55, 64 (1979), but that a liquor license is not. And the City of Rochester has no more authority to regulate the hours of operation of licensed taverns than it has to dictate the hours during which horses may be trained, or the hours during which licensed attorneys may practice.

Since Plaintiffs had already been duly *issued* their liquor license, the building permit *application* cases on which the City seeks to rely are inapposite. *See, e.g.,*

3

*Soundview Associates v. Town of Riverhead*, 893 F.Supp.2d 416, 431 (E.D.N.Y. 2012), *quoting Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 379 (2d Cir. 1995) ("When a permit has already been granted, 'the 'clear entitlement' test no longer is applicable to the special permit because the test applies only to permits being sought. The special permit, once issued, unquestionably is the property of the recipient") (brackets omitted).

"It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Traux v. Raich*, 239 U.S. 33, 41 (1915). The City had no authority to infringe on that right, much less to do so without a pre-deprivation hearing.

Point Two:

**The City Improperly Infringed upon Plaintiffs' Property Interest.**

The City pretends that it "took no action against the Plaintiffs' liquor license" but admits in the same breath that it "denied hours of operation to 2:00 A.M. on Monday through Thursday." *See* City's Brief at p. 9. Will the City claim in open Court that prohibiting a licensed business from operating does not deny use of the license?!

As the New York State Supreme Court (ARK, *J.*) declared in Plaintiffs' Article 78 proceeding against the City, the "authority to shut down an establishment by decree is the ultimate regulatory power, and not one to be assigned to a mere local

4

law...". *See* Plaintiffs' Appendix at 3, Burger Affidavit dated February 29, 2016 ("Burger aff.") <u>Exhibit C</u>, Amended Decision, Judgment and Order, at p. 5. While the City contends that it "did not purposefully impugn or impair the Plaintiffs' liquor license" (City's brief at 10), the fact remains that the City *did* curtail Plaintiffs' full use and enjoyment of their liquor license and it was *unlawful* for the City to do so; the City must accordingly compensate Plaintiffs for the damages caused thereby. *See Vives v. City of New York,* 524 F.3d 346, 350 (2d Cir. 2008) ("[A] municipality is liable for even its good faith constitutional violations presuming that the municipality has a policy that causes those violations.")

The New York State Courts have determined that it was *illegal* for the City to even put Plaintiffs in the position of having to seek a variance from the City's ZBA in order to operate their lawful business between the state-sanctioned hours of 11:00 p.m. and 2:30 a.m. *See* Burger aff. <u>Exhibits C</u> through <u>F</u>. The City does not and cannot deny that Obsessions lost profits and incurred costs as a result of the ordinance. The City cannot honestly justify depriving Obsessions of a property interest based on an ordinance that it had no authority to enact in the first place! *See, e.g., Linkletter v. Walker*, 381 U.S. 618, 623 (1965), *quoting Norton v. Shelby County*, 118 U.S. 425, 439 (1886) ("an unconstitutional law "confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed"); *Brodsky v. Murphy*, 25 N.Y.2d 518, 521 (1969); *Manocherian v. Lenox Hill Hosp.*, 229 A.D.2d

5

197 (2nd Dep't 1997); *Town of Islip v. Paliotti,* 196 A.D.2d 648, 649 (2nd Dep't 1993) ("a statute or part of a statute found to be unconstitutional is void ab initio").

If the City's defunct ordinance had never been enacted, yet City officers forced Obsessions to close during lawful hours based on an uncodified City policy, it could not be denied that their actions had deprived Obsessions and Mrs. Ortiz of property without Due Process. The fact that the City codified its unlawful practice does not *excuse* it from liability; indeed such ordinances are the quintessential form of "policy and practice" *required* for municipal liability. *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690 (1978); *see* 42 U.S.C. § 1983 (authorizing remedies for actions taken "under color of … ordinance").

### Point Three:

### The City Acted Without Authority and, *a fortiori*, Arbitrarily.

The City attempts to reinvent this matter as a run of the mill variance dispute, contending that 1) the City did not act arbitrarily in promulgating RMC § 120-34(O), which prohibited Plaintiffs from operating their lawful business after 11:00 p.m. and 2) its ZBA did not act arbitrarily in partially denying Plaintiffs' application for such a variance. *See* City's Brief at p. 11-12.

In doing so, the City ignores what distinguishes the present case from run of the mill variance disputes: the City *lacked authority* to regulate the hours of Plaintiffs' lawful business *in the first place*. This is not "the conventional planning dispute" which is "not tainted with fundamental procedural irregularity" and "takes

places within the framework of an admittedly valid state subdivision scheme" and thus "does not implicate the Constitution." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999), *quoting Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832-33 (1st Cir. 1982).

The fact that the City acted *ultra vires*, in it of itself, was "sufficiently arbitrary to amount to a substantive due process violation." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 789 (2d Cir. 2007); *Sullivan v. Town of Salem*, 805 F.2d 81, 85-86 (2d cir. 1986) (official imposition of a requirement "which is not only unauthorized by, but contrary to, [state] law" may deprive a plaintiff of property without due process, and the municipality "could be liable if its policy or the implementation thereof caused" the deprivation); *Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 260 (D. Conn. 2012) ("the Second Circuit has strongly suggested that actions taken without authority under state law … give rise to a conclusion that the state entity lacked a rational basis for their actions, and that such actions violate substantive due process"); *Sloup v. Loeffler*, 2008 WL 3978208 at \*13 (EDNY 2008) (officials acted in "an arbitrary or irrational, conscience-shocking manner" by demanding that plaintiff remove fishing traps from a town harbor, where "defendants lack the legal authority to regulate fishing in the waters of Islip"); *see Sloup v. Loeffler*, 745 F. Supp. 2d 115, 127 (EDNY 2010); *Cerberus Props., Inc. v. Kirkmire*, 121 A.D.3d 1556 (4th Dep't 2014) (complaint alleging that a City officer interfered with the petitioner's licensed business without authority, supported by a state court finding that the City's acts were "in violation of lawful procedure",

"clearly alleged a federal constitutional claim under the Due Process Clause and 42 USC § 1983"). Simply put, Rochester's City Council could have "no legitimate reason for its decision" to enact an ordinance that was clearly beyond its authority, illegal and void. *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988).

The City insists that its actions were not "arbitrary and outrageous" because the case of *People v. De Jesus,* 54 N.Y.2d 465 (1981), which also originated in Rochester, "is not controlling in this matter." City's brief at 13-15. Little more need be said about this other than that the New York State Supreme Court obviously disagreed. Burger aff. <u>Exhibit C</u>, Amended Decision, Judgment and Order, at 4-5. But the argument is irrelevant, for the City cannot deny that *Obsessions Bar and Grill v. City of Rochester*, 118 A.D.3d 1366 (2014), *is* controlling here. The ordinance was beyond the City's authority to enact, and the City cannot re-litigate that issue here. *Obsessions* is not only law of the case, it is law of the land.

In *Cine SK8*, the Second Circuit held that the Town's act of amending a special use permit was "sufficiently arbitrary to amount to a substantive due process violation" (507 F.3d 778 at 789) because the Town was without authority to amend the permit, despite the fact that the Town did have the authority to suspend or revoke the permit. Here, in contrast, the City of Rochester has absolutely *no* authority to control bar hours or any other detail of operation of a state-licensed tavern. The City of Rochester has been on notice for over three decades that it lacks the power to enact an ordinance that "would render illegal what is specifically allowed by State law". *People v. De Jesus,* 54 N.Y.2d 465, 472 (1981).

8

In a last-ditch effort to avoid liability, the City invites the Court to re-imagine its patently illegal ordinance as "a random arbitrary deprivation of property". City's brief at 16-17; *see generally Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984). The City's argument fails because "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." *Rivera-Powell v. New York City Bd. of Elections*, 470 F3d 458, 465 (2d Cir 2006); *see also Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Rochester City Council enacted the illegal ordinance at issue and must be regarded as the ultimate decision maker with final authority over significant municipal matters.

The City also mistakenly cites *Deperno v. Town of Verona*, 2011 WL 4499293 (N.D.N.Y. 2011), which held that the plaintiff had no protected property interest in a sign permit *that had not been granted and the town had the discretion to deny*. The District Court opined that an Article 78 proceeding afforded the plaintiff an adequate post-deprivation remedy for such a "random or arbitrary deprivation of property". *Id.* at *7. But "[i]t has long been settled that a party aggrieved by loss of a pre-existing right or privilege may enjoy procedural rights not available to one denied the right or privilege in the first instance. To draw upon common examples …. a liquor license cannot be canceled or revoked without a formal hearing; whereas

9

a rejected applicant for such a license possesses no such right". *Sumpter v. White Plains Hous. Auth.*, 29 N.Y.2d 420, 425 (1972).

In *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877 (2d Cir. 1996), the Second Circuit Court of Appeals was likewise reviewing a deprivation of a property interest that "occurred because of a random and arbitrary act" when it opined that an Article 78 proceeding provided an adequate post-deprivation remedy. *Id.* at 881. But in the matter at bar, the Plaintiffs' damages were caused by an *unlawful legislative enactment*, not the unauthorized act of a City employee. As such, *Deperno* and *Hellenic* support the Plaintiffs' claims because the United States "Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic,* 101 F.3d 877 at 880. "When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Id.* at 880, citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982) (post-deprivation process is "constitutionally inadequate" where, as here, the ordinance itself "destroys a complainant's property interest, by operation of law").

Obsessions' losses were caused by the City's ordinance itself. The enactment of an ordinance "unquestionably constitutes an act of official government policy." *Pembaur v. Cincinnati*, 475 US 469, 480 (1986). "The deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law."

10

*Zinermon v. Burch*, 494 U.S. 113, 138 (1990). Cases involving "random and unauthorized" deprivations of property are thus inapposite. *Zinermon*, at 135-36. And the opportunity to seek a discretionary variance from an illegal ordinance *after* the deprivation occurs is a constitutionally inadequate, if not entirely pointless, procedure.

It would of course be unfair to hold a municipality liable for unauthorized acts of its employees, or for failing to provide a pre-deprivation hearing in such cases, since "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Zinermon v. Burch*, 494 U.S. 113, 138 (1990), quoting *Parratt v. Taylor*, 451 U.S. 527 (1981). But when the City enacted its ordinance, it could easily have predicted - and indeed surely intended - that the ordinance would be enforced. And the City could certainly predict that many law-abiding businesses and business owners like Obsession and Mrs. Ortiz would obey the ordinance, to their detriment, until the courts struck it down.

### Point Four:

### Plaintiffs' Lawsuit is Not Precluded.

The City argues that Plaintiffs were afforded procedural due process because they were able to appeal the ZBA's decision and challenge the legality of RMC § 120-34(O) in the New York State Courts by way of an Article 78 proceeding after the City legislatively interfered with their vested property interest in a lucrative

11

liquor license. The City's argument is contrary to established Second Circuit precedent. *See Wahba v New York Univ.*, 492 F2d 96, 101 (2d Cir 1974).

Plaintiffs' Article 78 proceeding against the City was the vehicle through which Plaintiffs fought to get RMC § 120-34(O) struck down. Once the New York State Courts nullified RMC § 120-34(O), Plaintiffs were in a position to bring a section 1983 claim to recover the damages they sustained as a result of the ordinance, including the lost profits, lost business opportunity and lost good will during the hours that the City impermissibly shut down Plaintiffs' lawful business despite their state-issued liquor license. *See Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986) (plaintiff not barred from bringing a federal action under section 1983 seeking damages for the same factual circumstances that were previously at issue in an Article 78 proceeding, since monetary damages under section 1983 are not "incidental to the primary relief sought in the article 78 proceeding"); *Parker v. Blauvelt Vol. Fire Dep't, Inc.*, 93 N.Y.2d 343, 348-49 (1999) (same); *Norton v. Town of Islip*, 239 F. Supp. 2d 264 (EDNY 2003) ("[t]he availability of post-deprivation judicial review in the state courts bars a procedural due process claim" only for "'random and unauthorized' conduct" of a functionary).

Finally, the City laments that, if the Plaintiffs prevail, it would follow that "any mistake, contrary administrative decision or dismissed ticket which had been made by a municipality or any governmental entity … would be a violation of 42 USC section 1983 and a plaintiff's constitutional rights." Campolieto aff. dated May 31, 2015 at ¶ 12. To the contrary, under *Monell*, municipalities will remain liable

12

only for their official policies and ordinances. The City's "floodgate" argument holds water only if the City intends to admit that it has enacted, or intends to enact, a flood of ordinances that are beyond its power. *But see*, *Jiovon Anonymous v. City of Rochester*, 13 N.Y.3d 35 (2009) (Rochester's curfew ordinance unconstitutional); *D'Alessandro v. Kirkmire*, 125 A.D.3d 1309 (4th Dep't 2015) (Rochester's "case management fee" ordinance unconstitutional); *Turner v. Municipal Code Violations Bureau of the City of Rochester*, 122 A.D.3d 1376 (4th Dep't 2014) (Rochester's "outdoor storage" ordinance unconstitutional); *Cerberus Props., Inc. v. Kirkmire*, 121 A.D.3d 1556 (4th Dep't 2014) (Rochester's interference with a federally-licensed lead based paint inspection firm "deprived plaintiffs of property rights" without due process); *People v. Davis*, 25 Misc.3d 634 (2009) (Rochester ordinance authorizing towing and impoundment of automobiles for noise violations without a hearing unconstitutional); *People v. Iverson*, 22 Misc.3d 470 (2008) (same). If the City intends to continue to "flood" the courts with its recent emerging pattern of unconstitutional legislative enactments, it should not be heard to complain that it is wet. After opening these alleged constitutional "floodgates" the City should not be heard to cry about the cost of a sump pump.

The Court must consider the result of a contrary conclusion. If ordinances that are entirely beyond the municipality's powers to enact, and which deprive citizens of property without any pre-deprivation hearing, are not sufficiently arbitrary to support a Due Process claim, then those hapless citizens would have no federal remedy. That is not the result that Congress intended when it enacted 42

13

U.S.C. section 1983. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (Congress has determined that the public as a whole has an interest in vindicating constitutional rights, and "the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future.")

CONCLUSION

Plaintiffs Obsession Sports Bar & Grill, Inc. and Joan Ortiz respectfully request that this Honorable Court grant them partial summary judgment against the City of Rochester on the issue of municipal liability under 42 U.S.C. § 1983, and deny Defendant's motion to dismiss.

Dated:  June 21, 2016
        Rochester, New York

                                                 s/Michael A. Burger
Michael A. Burger
SANTIAGO BURGER LLP
*Attorneys for Plaintiffs*
*Obsession Sports Bar & Grill, Inc.*
*& Joan Ortiz*
1250 Pittsford Victor Road
Building 100, Suite 190
Pittsford, NY 14534
Tel.: (585) 563-2400
mike@litgrp.com